JAMES CHRISTY v. RUFUS C. SMITH.

*Competency of agent as witness. Proof of release. Practice. Competency of postmaster as witness. Liability of postmaster for loss of letter.*

An agent, factor, or broker, is not a competent witness for the plaintiff in a suit, without a release, when his testimony would discharge him from the plaintiff's demand by establishing it against the defendant.

But when the deposition of a witness thus interested is offered by the plaintiff, and a release in due form to the witness, purporting to be executed by the plaintiff, is attached to the deposition, and it does not appear, that the defendant made any question at the trial in reference to the genuineness of the plaintiff's signature to the release, he cannot afterwards be allowed to object, that the execution of the release was not duly proved, although it is stated upon the bill of exceptions, that no evidence was adduced to prove its execution.

In an action against a postmaster for negligence, by reason of which a letter directed to his office and alleged to have been received there was lost, the postmaster of the office, at which the letter was deposited, is a competent witness for the plaintiff, to prove that the letter was forwarded in due course of mail.

And the agent of the plaintiff, to whom the letter was directed, for the benefit of the plaintiff, is a competent witness for the plaintiff, to prove that he never received the letter from the post office.

Under a declaration against a postmaster, which alleges, that he carelessly and negligently lost a letter, which was received at his office and was directed to the plaintiff, the defendant is not entitled to have the jury instructed, that in order to establish the fact of want of ordinary diligence, the plaintiff must show some particular act of negligence in relation to the letter, and that the loss was the direct consequence of that particular negligence; but any general proof of negligence, tending to show that the loss was occasioned thereby, and which satisfies the jury, that it was so occasioned, is sufficient to sustain the issue for the plaintiff.

And if the loss, in such case, be occasioned by the negligence of the clerks and servants of the defendant, who were not regularly appointed and sworn as his assistants, the defendant will be responsible.

TRESPASS ON THE CASE, brought against the defendant for negligence in the discharge of his duty as postmaster at Waterbury, whereby it was alleged a letter containing $50,00 in money, the

property of the plaintiff, was lost. There was also a count in trover for the same money. The suit was brought in the county of WASH- INGTON. Plea, the general issue, and trial by jury, March Term, 1851,—POLAND, J., presiding.

On trial the plaintiff offered in evidence the deposition of Moses True, Jr.; to which the defendant objected, for the interest of the witness in the event of the suit. There was attached to the deposi- tion a release to the witness, in due form, of all liability to the plain- tiff for the loss of the letter or money in question, which purported to be executed by the plaintiff. The objection was overruled; and the testimony of the witness tended to prove, that on the twenty third of November, 1849, he deposited in the post office at Salisbury, Massachusetts, a letter directed to Moses Christy, at Waterbury, Vermont, containing $50,00 in money on account of James Christy, for butter which the witness sold for James Christy; that before the letter was mailed, the witness requested Cyrus Dearborn, post master at that post office, to count the money, which he did, and that he mailed the letter in the presence of the witness, with the money in- closed; and that the release executed by the plaintiff and attached to the deposition was delivered to the witness previous to his giving the testimony. The plaintiff also offered in evidence the deposition of Cyrus Dearborn, to which the defendant objected for interest in the witness in the event of the suit. There was also attached to this deposition a full release from the plaintiff to the witness of all lia- bility by reason of the loss of the letter and money. The objection was overruled; and the testimony tended to prove, that the witness was post master at Salisbury, and that Moses True, Jr., on the twenty third of November, 1849, brought a letter into the post office, directed to Moses Christy, of Waterbury, Vermont; that the letter was unsealed, and True requested him to examine it, and he did so, and found it to contain $50,00; that the witness then sealed the letter, with the money inclosed, in presence of True, and then mailed the letter and sent it direct to Waterbury, as directed; and that the release executed by the plaintiff and attached to the deposition was delivered to the witness previous to his testifying. No evidence was offered, to prove the execution and delivery of the releases annexed to the deposition, other than what is contained in the depositions. The plaintiff also offered, as a witness, Moses Christy, to whom the

letter in question was directed, to prove that he did not receive the letter, or money.  To this witness the defendant objected, on the ground of interest in the suit; but the objection was overruled by the court.

This plaintiff gave evidence tending to prove, that in the autumn of 1849 Moses Christy had charge of the plaintiff's store in Waterbury, and was accustomed to send butter to Moses True, Jr., to sell, with instructions to send the money, the proceeds of the sales, by mail, to said Moses Christy ; that mails from the east and west arrived daily at Waterbury; that the letter mentioned in the depositions of True and Dearborn came to the post office in Waterbury, kept by the defendant, on the twenty fourth day of November, 1849, at about five o'clock in the afternoon; that Moses Christy, and one Wallace Christy, a son and clerk of the plaintiff, and one Woodward, who kept a druggist's store in a room adjoining the plaintiff's store, were in the habit of taking letters from the post office, directed to the plaintiff or to Moses Christy, by their permission ; that when letters so directed were taken from the post office by Woodward, he usually delivered them to Moses Christy, or, if he was busy, deposited them on the plaintiff's desk in the store ; that when letters so directed were taken from the post office by Wallace Christy, he usually delivered them to Moses Christy, or, if he was busy, deposited them in a drawer in the store ; that some one or more of these persons were in the habit of calling at the office for letters soon after the arrival of the mail, and that the plaintiff and Moses Christy were accustomed to receive many letters ; and that on the arrival of the mails large numbers of persons were in the habit of calling at the post office for the purpose of seeing if they had letters.  Woodward was unable to state, whether he received the letter in question, or not; but he testified, that if he did, he delivered it to Moses Christy, or laid it upon the plaintiff's desk, according to his usual custom.  Wallace Christy called at the post office in the evening of the twenty fourth day of November, and received one letter, directed to Moses Christy, from a person, relating to some pumps that had been ordered ; but whether he took from the post office more than one letter that evening he was unable to state; but he did state, that he did not receive the letter in question, containing the $50,00.

The testimony tended farther to prove, that the letter in question, containing the $50,00 was never received by Moses Christy, or by any person for him; that about ten days after the twenty fourth of November, Moses Christy, having been advised by True, that he had sent the $50,00, called at the post office and inquired of the defendant in respect to the letter, but the letter could not be found, and the defendant could not tell, to whom it had been delivered; that one half of a sixteen foot room was occupied by the defendant for his post office business, which was partitioned off by a railing, and the other part of the room was left for the accommodation of those who might call to deposite or receive letters; that at one end of the railing, and resting upon it, was a case of letter boxes, with a sash and glass front, occupying about one half of the length of the railing, similar to those ordinarily used in large villages, with an aperture for the delivery of letters,—one of which boxes had been appropriated by the defendant and used about one year, for a depository of letters directed to the plaintiff and to Moses Christy, and without objection on their part; that directly in rear of the letter boxes was a counter, on which the defendant usually changed the mails; and that at the other end of the railing from the letter boxes, and in rear of the railing, but not within reach of the letter boxes, was a table, which the defendant had occasionally used in settling the accounts of a former post master, who had died. There was no evidence tending to prove, that any persons, other than the defendant's assistants, were permitted by him to go behind the railing, at the time the letter in question arrived at the post office. The evidence tended to prove, that the persons occasionally employed by the defendant as assistants were suitable persons for that purpose. It appeared, that the defendant employed several persons to assist him in managing the post office in the summer and autumn of 1849; but it did not appear, from any evidence in the case, whether any of these persons were appointed and sworn as the defendant's assistants. The plaintiff's testimony also tended to prove, that a person standing outside of the railing and letter boxes might reach through the small door, used for the delivery of letters, and take papers or letters from the box, where the plaintiff's letters were kept. It appeared by the defendant's account for postage against the plaintiff, that one or two letters were charged to him

on the twenty fourth of November, 1849, and the plaintiff produced four or five letters, which, by the ordinary course of the mails, would have been received on that day.

The defendant requested the court to charge the jury as follows; —1. That the defendant does not in any manner stand as an insurer in relation to the business of his office, and is only held to ordinary diligence in the discharge of the duties of his office, and can only be made liable for losses occasioned by a want of such diligence, and that the burden of proof is upon the plaintiff, to establish the fact of the want of such diligence. 2. That in order to establish the fact of want of ordinary diligence, the plaintiff must show some particular act of negligence in relation to the letter in question, and that the loss was the direct consequence of the particular negligence proved. 3. That although there may have been official misconduct on the part of the defendant, yet unless it be shown, that the plaintiff's loss was the result of such misconduct, he cannot recover. 4. That if the letter were by mistake delivered to the wrong person, stolen by a stranger, or embezzled by a clerk, the defendant is not liable, unless he has been negligent, and the loss was the direct consequence of his negligence. That it is not sufficient, to entitle the plaintiff to recover, merely to show, that a letter was received at the office, and that the person, to whom it was directed, has not received it. 6. That the post master is not liable for the negligence of his deputies, unless he is guilty of negligence in appointing wholly unsuitable persons. 7. That the defendant being a public officer, he would not be liable in an action of trover, unless, at the time the letter was called for, he had the letter in his possession, or control, and withheld it, or had actually appropriated the letter, or money, to his own use.

The court charged the jury in accordance with all the foregoing requests, except the second and sixth. In relation to the second request the court charged the jury, that it was not necessary, in order to enable the plaintiff to recover, that he should show a particular act of negligence in relation to the letter in question; but that, if the plaintiff had shown a general want of common care and diligence on the part of the defendant, either in the construction of his places of deposite for letters, so that they were unsafe, or in the management of the post office, in permitting persons to go behind the railing,

who had no legal right to go there, and had also satisfied them, that the letter and money in question were lost in consequence of such negligence, or misconduct, of the defendant, then the defendant should be liable. In reference to the sixth request the court charged the jury, that as there was no proof, that any of the persons, who were employed by the defendant in the office, had ever been appointed, or sworn, as assistants, they were to be regarded as mere clerks, or servants, of the defendant, and that if, through negligence, or want of common care and diligence, on the part of such clerks, or servants, the money and letters were lost, the defendant would be liable therefor.

Verdict for plaintiff. Exceptions by defendant.

*O. H. Smith* for defendant.

True was clearly interested in favor of the plaintiff, to establish the fact, that he sent the money. He was not a competent witness, to prove the delivery of the release, or its execution. *Fay et al.* v. *Green*, 1 Aik. 71. He does not testify, that the release is genuine, and we insist, that he was not a competent witness without a release. *Dennison* v. *Hibbard*, 5 Vt. 496. 1 Greenl. Ev. 396. The same objections existed against the deposition of Dearborn and the testimony of Moses Christy,—more particularly to the latter.

There being no evidence, whether or not the defendant's assistants were regularly appointed and sworn, the presumption of law is, that they were so appointed and sworn. 2 Cow. & H. Notes to Phil. Ev. 298.

The plaintiff alleges, that the defendant carelessly and negligently lost the letter in question; and to support this allegation he must prove some particular act of carelessness, or negligence, by which the letter was lost. The defendant is not required to come prepared to vindicate his official conduct generally, for a series of years. The proof must be confined to the particular allegation. 2 Cow. & H. Notes to Phil. Ev. 493.

The case shows, that the defendant's letter boxes were constructed similar to those in general use in large villages, and that a particular box was appropriated and used for the plaintiff about one year, without objection; and that there was no evidence tending to prove, that any persons, other than the defendant's assistants, were permit-

ted to go behind the railing, when the letter was received. There was therefore no evidence ténding to prove, that the defendant was guilty of any negligence, or misconduct, personally, or otherwise, and the county court erred in their charge to the jury. *Manwell, Adm'x,* v. *Briggs,* 17 Vt. 146.

The defendant is not liable for the negligence of his assistants. *Wiggins* v. *Hathaway,* 6 Barb. 632. *Dunlap* v. *Munroe,* 7 Cranch 242. 3 U. S. Law Mag. 244.

*Dillingham* for plaintiff.

The true test of the interest of a witness is, that he will either gain, or lose, by the direct legal operation and effect of the judgment, or that the record will be evidence for or against him in some other action. 1 Greenl. Ev., § 390. It was immaterial to True, Dearborn, or Moses Christy, as far as pecuniary interest was concerned, which way the judgment was in the present case. ' Nor had any one of the three any interest in the record. 1 Greenl. Ev., § 404.

Suppose these witnesses, or any one of them, to be interested in this record, they still fall within the exception to that rule and could not be excluded. The exception to the general rule is, that agents, carriers, factors, brokers and servants are admissible, without release, when offered to prove the making of contracts, receipt or payment of money, the receipt or delivery of goods, and other acts done within the scope of their employment. 1 Greenl. Ev., §§ 416, 417. *And this, too, notwithstanding the apparent interest of the witness in the event of the suit.* Ib. *Theobold* v. *Tregott,* 11 Mod. 262, per HOLT, Ch. J.

The deponents True and Dearborn, producing their releases in court, were competent to prove them. *Oaks* v. *Weller,* 16 Vt. 63.

That part of the charge excepted to seems to be well sustained by the case of *Danforth* v. *Grant,* 14 Vt. 283.

The opinion of the court was delivered by

KELLOGG, J. Upon the trial in the court below, exceptions were taken to the admission of the depositions of Moses True, Jr., and Cyrus Dearborn, upon the ground that the deponents were interested in the event of the suit.

It is a *general* rule of the law of evidence, that persons, who have a *direct, certain* and *immediate interest* in the event of the suit, are incompetent witnesses. To this general rule, however, there are exceptions,—as in the case of *agents*, carriers, factors, brokers and other servants, who may be called to prove all acts done by them within the scope of their employment. This exception is said to be founded in public convenience and necessity; and it is said, that it extends to every species of agency, by which business is transacted, unless the case is overborne by some other rule. 1 Greenl. Ev., § 416. This exception would seem to be broad enough to admit agents and servants to prove claims in favor of their principals, although the claims might be for injuries resulting from the negligence of the agent, or servant; and yet it is well settled, that in such cases they are incompetent, without a discharge. The same principle is applied to all cases, where the testimony of the witness adduced by the plaintiff would discharge him from the plaintiff's demand, by establishing it against the defendant. The witness, True, would seem to stand in that situation. He was indebted to the plaintiff in the sum of fifty dollars, and professes to have forwarded the amount by mail; and the plaintiff is seeking by this suit to recover the same of the defendant. The witness, then, has an interest in establishing the plaintiff's claim against the defendant, for that would discharge the liability of the witness to the plaintiff. 1 Greenl. Ev., § 396, note 4. *Emerton* v. *Andrews*, 4 Mass. 653. *Hodson* v. *Marshall*, 7 C. & P. 16.

But it is claimed, that the interest of the witness was discharged by the plaintiff's release, which was attached to the deposition. The release is in due form, and purports to have been executed by the plaintiff, and is broad enough in its terms to divest the interest of the witness. The fact, that the release is attached to the deposition by the witness, would seem to be sufficient evidence, that he had it in his possession at the time of making the deposition; for if subsequently acquired, it could not have been inclosed in it. Indeed, the release being directed to the witness and being in his possession is *prima facie* evidence, that it was duly delivered. It seems to us, that the only question in relation to the release, about which there could have been any controversy, was, whether it was executed by

the plaintiff; and that matter does not appear to have been controverted at the trial. The original release was before the court, and had its execution been questioned, proof might then have been offered to establish it. But no such question appears to have been raised. The objection to the deposition was, that the deponent was interested. The release purported to discharge that interest; and if the party relied upon the want of proof of its due execution, we think he should have presented that question distinctly to the court. It *is* true, it appears by the bill of exceptions, after stating the offer of the deposition, the objection that the witness was interested, the admission of the testimony by the court, and exceptions by the defendant, " no evidence was offered to prove the execution and delivery of the discharge, other than what is contained in the deposition." Now, we think it will hardly do, to permit the party to lie by, simply objecting to the witness on the ground of interest, when that interest is apparently removed, and no objection is taken at the time to the instrument by which it is removed, or its execution, and raise the objection for the first time by the bill of exceptions. The execution of the release not having been questioned at the trial, the release must be treated as received by *consent*, the same not having been objected to. 9 Cow. 140. Graham on New Trials 201.

This result renders it unnecessary to inquire, whether True was competent to prove the execution of the discharge. The case of *Fay et al. v. Green*, 1 Aik. 71, would seem to be an authority opposed to his competency.

The objection to the witness Dearborn is also founded upon his supposed interest in the suit. We are unable, however, to discover any disqualifying interest in this witness. He was in no manner connected with or interested in the business transactions of the plaintiff and True. Dearborn was the post master at Salisbury, in whose office the letter containing the money was deposited by True, to be forwarded by mail. But this, we apprehend, did not render him an incompetent witness. The same objection might with equal propriety be urged to every post master upon the mail route between Salisbury and Waterbury. The letter is shown to have reached the latter office, and Dearborn is in no manner implicated in its loss. We cannot regard him as possessing that *certain, direct* and *immediate* interest in the event of the suit, which disqualifies the witness.

Nor can we perceive, that Moses Christy had any interest, which rendered him an incompetent witness. He was the agent of the plaintiff, but not, like True, indebted to the plaintiff, or liable for the fifty dollars; for there is nothing in the case showing that it ever came to his hands. There is no ground for the exclusion of this witness.

The case shows, that the letter of True to Christy was received at the office of the defendant by due course of the mail; and there is no evidence tending to show, that the defendant delivered the letter to Christy, or to any other person. Indeed, the fact of the reception of the letter by the defendant seems not to have been controverted at the trial, but was treated as a matter, that was satisfactorily established, and doubtless the evidence was sufficient to warrant it.

Exception was taken to the charge given to the jury and the refusal of the court to charge as requested. It appears, that all the requests for particular instructions to the jury were complied with, but the second and sixth. The second required the court to instruct the jury, " that, in order to establish the fact of want of ordinary diligence, the plaintiff must show some particular act of negligence in relation to the letter, and that the loss was the direct consequence of that particular negligence." We do not think, the defendant was entitled to the particular charge requested. The declaration charges, in general terms, that the defendant " carelessly and negligently lost the letter." Had the plaintiff alleged *some particular act* of negligence, by which the loss of the letter was occasioned, he doubtless must have proved the particular act of negligence stated in his declaration. But he was not bound so to declare, but was at liberty to declare generally, that the loss was occasioned by the defendant's carelessness and negligence. And under such a declaration, any general proof of negligence, *tending* to show, that the loss was occasioned thereby, and which *satisfies* the jury, that it was so occasioned, is sufficient to sustain the issue for the plaintiff. We are therefore of opinion, that the charge upon this point was unexceptionable.

The sixth request required instructions to be given to the jury, that the post master was not liable for the negligence of his deputies, unless he was guilty of negligence in appointing unsuitable persons.

This request *implies*, that the defendant had deputies, who were duly *appointed* and legally *authorized* to discharge the duties of the office. But it is to be borne in mind, that the case does not disclose, that such was the fact; and if there was no evidence of such fact, then the party surely was not entitled to the charge requested. The case shows, " that the persons *occasionally* employed by the defendant as assistants were not *unsuitable* persons to assist him in managing the post office; but it does not appear, that any of these persons were *appointed* and sworn as the defendant's assistants. This language, we think, will hardly warrant the conclusion, that the several persons, who were *occasionally* called in to aid the post master, were the appointed and qualified assistants of the defendant; and if they were not, the court was fully justified in the instructions given to the jury. Upon the whole, we are inclined to the opinion, that the charge was entirely unexceptionable.

The judgment of the county court must therefore be affirmed.