Muster vs. The Chicago, Milwaukee & St. Paul Railway Company.

*October 15 — November 6, 1884.*

61 325!
75 383'

61      325
59 LRA  800;

RAILROADS: NEGLIGENCE. *(1)* Negligence of postal agents. *(2)* Presumption against unlawful acts. *(3)* Injury to employee: Failure to provide against improbable accident. *(4, 5)* Postal regulations: Speed of trains.

1. A railroad company is not responsible for the negligent acts of postal clerks or agents upon its trains.
2. The evidence showed that a mail-bag was thrown either from the mail car, express car, or baggage car on a train by a person within the car. The bag could not lawfully have been in any other than the mail car, and no person other than a postal clerk or agent could lawfully enter such car or throw the bag therefrom. *Held* that, in the absence of evidence to the contrary, it will be presumed that the bag was thrown from the mail car by a postal clerk or agent.
3. The mail-bag was usually thrown from the train about 200 feet west of the depot, and there was no evidence that it had ever been thrown off at the depot prior to the occasion in question. *Held,*

that the railroad company was not chargeable with notice that it was likely to be thrown off at the depot, and hence was not bound to guard, by notice or otherwise, against an injury to one of its employees resulting from its being thrown off there.

4. The regulations of the post-office department do not require the speed of mail trains to be slackened at catch stations where cranes are erected for the exchange of mails.

5. The running of a mail train at the rate of thirty or thirty-five miles per hour past a station is not, of itself, unlawful; nor can negligence be imputed to the railroad company from that fact alone, so as to make it liable for an injury resulting from the throwing of a mail-bag from such train.

APPEAL from the Circuit Court for *Jefferson* County.

Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant company.

The plaintiff and one Roth were at work for the defendant, putting a cornice on its depot building at Tunnel City, or Greenfield, on its line of railway between Milwaukee and La Crosse. A scaffold had been erected on the south side of the depot — towards the main track — upon which they stood when at work on the cornice. It was agreed on the trial that the scaffold was substantially and safely built.

On December 2, 1882, at 8:20 A. M., a passenger train of the defendant, running from Chicago and Milwaukee to La Crosse, designated as train No. 3, ran past the depot at Greenfield at a speed (variously estimated) of from twelve to thirty or thirty-five miles per hour. A United States mail car in charge of a postal clerk or agent, and from which all the employees of defendant operating the train were excluded by law, constituted a part of the train. The postal car was located between the tender of the locomotive and the first or leading passenger coach, as were also an express car and a baggage car. There were four coaches and three sleepers in the train. The train was behind its schedule

time at Greenfield two hours and forty minutes. Greenfield was a flag station, but not a stopping place for train No. 3.

As the train passed the depot on that morning, some object, which Roth (the only witness who testified on the subject) thought was a mail-bag, was thrown by some person from one of the cars between the tender and first passenger coach, against one of the upright supports of the scaffold on which plaintiff was at work. It knocked the support from under the scaffold, by means whereof the staging on which the plaintiff stood, and the plaintiff with it, was precipitated to the platform below, whereby the plaintiff received the injuries complained of.

For the purpose of receiving the mail at Greenfield, the post-office department has caused to be erected a crane or mail-catcher about 200 feet west of the depot, from which mails were delivered into the postal car on train No. 3 without stopping the train or slackening its speed. The mail-bag for delivery at that point was usually thrown from the car near the mail-catcher.

After the testimony was all in, the jury, by direction of the circuit judge, returned a verdict for the defendant. A motion for a new trial was denied, and judgment for the defendant was entered pursuant to the verdict. The plaintiff appeals from the judgment.

*Harlow Pease*, for the appellant, contended, *inter alia*, that the accident was of such a nature that, unexplained, it created a presumption of negligence on the part of the defendant. *Kearney v. L., B. & S. C. R'y Co.* L. R. 5 Q. B. 411; L. R. 6 Q. B. 759; *Scott v. L. & St. K. D. Co.* 3 Hurl. & Colt. 596; *Byrne v. Boadle*, 2 id. 722; *Gee v. Metropolitan R'y Co.* L. R. 8 Q. B. 161; *Transportation Co. v. Downer*, 11 Wall. 129; *Mullen v. St. John*, 57 N. Y. 567; *Stokes v. Saltonstall*, 13 Peters, 181; *Rose v. Stephens & Condit T. Co.* 20 Blatchf. 411; *Edgerton v. N. Y. & H. R. R. Co.* 39 N. Y. 227; *Pittsburgh, C. & St. L. R. R. Co. v. Williams*,

Muster vs. The Chicago, Milwaukee & St. Paul R'y Co.

74 Ind. 462; *Eagle Packet Co. v. Defries*, 94 Ill. 598; *Thomas v. W. U. Tel. Co.* 100 Mass. 156; *Kirst v. M., L. S. & W. R'y Co.* 46 Wis. 489; *Cummings v. Nat. Furnace Co.* 60 id. 603; *Lane v. Atlantic Works*, 111 Mass. 136; *Treat v. B. & L. R. R. Corp.* 131 id. 371; *Weick v. Lander*, 75 Ill. 93. Irrespective of any ordinance or law regulating the speed of railroad trains at crossings or stations, the running at an excessive rate of speed is negligence, and if an injury is caused thereby the company is liable. Whether the rate of speed is excessive or dangerous in a given locality is a question of fact for the jury. *Massoth v. D. & H. Canal Co.* 64 N. Y. 524–531; *Cordell v. N. Y. C. & H. R. R. R. Co.* 70 id. 119–124; *Salter v. Utica & B. R. R. R. Co.* 88 id. 42–50; *C., B. & Q. R. R. Co. v. Gregory*, 58 Ill. 272; *Peters v. Rylands*, 20 Pa. St. 497–502. It is no justification for the defendant even if the postal clerk was in the wrong. If the negligence of the defendant in any manner or in any degree *contributed* to the injury then the defendant is liable. *Chapman v. N. H. R. R. Co.* 19 N. Y. 341; *Colgrove v. N. Y. & N. H., and N. Y. & H. R. R. Cos.* 20 id. 492; *Sheridan v. B., C. & N. R. R. Co.* 36 id. 39; *Clark v. Eighth Ave. R. R. Co.* id. 135–138; *Maverick v. Eighth Ave. R. R. Co.* id. 378–382; *Webster v. Hudson River R. R. Co.* 38 id. 260; *Barrett v. Third Ave. R. R. Co.* 45 id. 628; *Pollett v. Long*, 56 id. 200; *Slater v. Mersereau*, 64 id. 138; *Martin v. North Star Iron Works*, 31 Minn. 407; *Railroad Co. v. Barron*, 5 Wall. 90; *Ransier v. M. & St. L. R'y Co.* 20 N. W. Rep. (Minn.), 332; *Campbell v. Stillwater*, 20 N. W. Rep. (Minn.), 320; *Griggs v. Fleckenstein*, 14 Minn. 81, 93; *Lake. v. Milliken*, 62 Me. 240; *Dorsey v. P. & C. C. Co.* 42 Wis. 583–597.[1]

For the respondent there was a brief by *John W. Cary* and *D. S. Wegg*, and oral argument by *Mr. Wegg*.

[1] As to the liability of a railroad company for the negligent acts of postal agents, see *Snow v. Fitchburg R. R. Co.* 136 Mass. 552.— REP.

Muster vs. The Chicago, Milwaukee & St. Paul R'y Co.

Lyon, J. I. The learned counsel for the plaintiff maintained, in his argument, that there is no positive proof that the object thrown from the car was a mail-bag, or that it was thrown from the mail car, or that it was not thrown by one of the employees of the defendant company. From these premises he argued that the case is within the rule of *Kirst v. M., L. S. & W. R'y Co.* 46 Wis. 489, and *Cummings v. Nat. Furnace Co.* 60 Wis. 603. That rule is thus stated by Erle, C. J., in *Scott v. London & St. K. Docks Co.* 3 Hurl. & C. 596: "There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." The rule is sustained in numerous cases, many of which are cited in the brief of counsel for plaintiff.

The difficulty with the argument is in the premises upon which it is rested. The pleadings and proofs do not leave the cause of the accident in any doubt or uncertainty. The allegations of the complaint are that the defendant "carelessly and negligently discharged, unloaded, and ejected from one of the cars of said train, through an opening in the side of said car, a large mail-bag filled with heavy mail, which said mail-bag with its contents was, by the great velocity and momentum of said train, thrown against one of the supports of said scaffold, and thereby said support and the portion of said scaffold on which the plaintiff was standing, were displaced and knocked down," etc. Aside from the alleged speed of the train (which will be hereafter considered), all of the testimony on the subject is in harmony with these averments. Hence, it is an established fact in the case that the support upon which the staging of the scaffold rested was knocked down by reason of a mail-bag filled with mail matter having been cast against it.

It is in testimony and undisputed that such mail-bag was thrown from a car between the tender and first passenger coach through a side door by a person within the car. The mail car had a side door, and was located in the train between the tender and such coach. No person other than the postal clerk or agent had any lawful right to enter such car; no mail matter could lawfully have been in any other car on the train; and no person other than such clerk or agent could lawfully discharge the mail-bag. Such is the law, and the evidence does not tend to show that the law was violated in any of these particulars in discharging the mail from the train when the plaintiff was injured. In the absence of such proof it must be presumed that the mail-bag was discharged from the postal car by an employee of the post-office department, and not of the railway company. Such being the presumption, there is no room for the application of the rule above stated.

We do not understand counsel as claiming that the railway company is liable for the negligent act of the postal employee, if it is otherwise free of negligence contributing to the injury of the plaintiff. Such a claim, if made, could not be sustained. The government compels the company to carry the mails, and designates the trains upon which the same shall be carried. It prescribes the kind of cars which shall be provided, and appoints clerks and agents to take exclusive charge of mails on the trains, and to receive and discharge the same. Such clerks and agents are paid by the government, and are answerable only to the government for the manner in which they discharge their duties. The railway companies upon whose trains such duties are performed have no control whatever over them, and it would be just as absurd to hold one of these companies responsible for the negligent acts of such government employees which it had no means of preventing, as to hold the companies responsible for the negligent acts of passengers on their trains committed under like circumstances.

We conclude that the mere act of the postal employee in throwing off the mail-bag at the depot, conceding it to have been a negligent act, was not negligence on the part of the railway company.

II. But it is maintained that the train was propelled past the depot where the plaintiff was injured at an unreasonable rate of speed, which contributed to the injury, and hence the defendant is liable for such injury, although not responsible for the mail-bag being thrown off at that point.

It is probable that but for the momentum of the train the accident would not have happened. Yet it does not necessarily follow from this that the defendant is liable therefor. To render it liable some negligent or unlawful act on its part must be shown. It is said that the plaintiff did not know that this train passed the depot at such great speed; and, in view of the fact that the mail-bag might be thrown off there, and the scaffold on which he was at work thrown down thereby, the railway company should have informed him of the peril, and was negligent because it did not. This point is not well taken. All the evidence on that subject is to the effect that the mail-bag was usually discharged near the mail-catcher, which was 200 feet west of the depot, and there is no testimony whatever that it had ever before been thrown off at the depot. The company is not chargeable with notice that it was likely to be thrown off at the depot, and hence was not required to guard, by notice or otherwise, against an accident to the plaintiff resulting from its being thrown off there on the occasion in question.

But the principal ground upon which negligence is sought to be imputed to the defendant because of the speed of the train is found in the regulations of the post-office department on that subject.

Before proceeding to consider such regulations some observations will be made upon the testimony bearing upon the speed of the train. The plaintiff and Roth each thought the

train ran by the depot at the rate of from thirty to thirty-five miles an hour. Roth testified that he first saw it when it whistled nearly eighty rods east of the depot. The plaintiff gives no distance. He merely says that he was not looking at it more than a minute or two. Neither of them says that he thought of the speed of the train at the time, or that he watched its progress with reference to the time occupied in passing the space between any objects, the distance between which could be ascertained. Besides, the train was running almost directly towards them. The substance of their testimony is that the train was running fast. Their estimates of its precise velocity per hour are most unsatisfactory and unreliable.

On the other hand, it appeared that the train ran on an ascending grade — the steepest on that line of railway — for more than two miles before it reached the Greenfield depot, and that the track on that grade is laid on reversed curves. The train was a heavy one, and there is some evidence that the track was not in a condition favorable to a high rate of speed. These conditions necessarily greatly retarded the speed of the train, and strongly corroborate the testimony of the conductor and engineer to the effect that the train could not have been propelled up the grade past the depot at any high rate of speed. Their estimate of the speed of the train in question at that point is from ten to twelve miles per hour.

Giving proper weight to the above conditions, the existence of which are undisputed, it would be difficult to hold that the estimates of the plaintiff and Roth amount to anything more than a mere *scintilla* of evidence that the train was running thirty to thirty-five miles per hour. On the evidence in the case we should hesitate to sustain a special finding that it was running at that rate of speed. It would seem unreasonable to allow a verdict based entirely upon an opinion of a witness to stand, when the uncontroverted

facts proved demonstrate that the opinion is utterly erron-
eous.

The testimony relating to the speed of the train has been
considered, not because it is material to the determination
of the case, but because great stress was placed upon it in
the arguments. For the purposes of the case it may be
assumed that the plaintiff's estimate in that behalf is correct.

We will now consider the regulations of the post-office
department which are relied upon to establish the alleged
negligence or misconduct of the railway company. Only
three of these need be set out. They are as follows:

"1. The department will provide for the delivery of mails
to offices located within eighty rods or over that distance
from points at which passenger trains or trains on which
mails are carried do not make stops, or where there is a flag
station, and at such points the companies will be required to
slacken the speed of trains sufficiently to admit of the ex-
change of mails with safety.

"2. Cranes and catcher pouches. For the purpose of ex-
changing mails at certain way and flag stations between the
post-offices at these places and the railway offices without an
abatement or loss of speed of the train, the post-office de-
partment has introduced the use of a mail-catcher, causing
the erection at each of such stations of a crane on which
the pouch to be exchanged by the postmasters is to be hung.

"3. At catch stations where cranes are erected for the ex-
change of mails without slackening the speed of trains, the
pouch must never be kicked off, but must be thrown off by
hand to a distance of at least ten feet from the track, so as
to prevent the pouch from being drawn under the train."

As already stated, a crane had been erected for the re-
ceiving of mails on the cars at Greenfield, which thereby
became a catch station. It is conceded to be a flag station,
although as a matter of fact it was not, so far as train No. 3
was concerned. That train did not stop there, and could

not properly be flagged to do so. It was said in argument that there is no proof that the crane erected at that point was used; but this is an error. The proof is conclusive that it was in use. The conductor of train No. 3 testified that "there was and is now a crane at this station for the delivery of mail *for this train.*" He then described the process of delivery from the crane into the car.

The above regulations of the department are *in pari materia,* and must be construed together. So construed, their meaning and effect are perfectly plain. At stations where mail trains do not stop, and which are not catch stations, the speed of the train must be slackened to the point of safety in the exchange of the mails. At catch stations no slackening of the speed of the train is required.

It cannot be successfully maintained that a speed of thirty or thirty-five miles per hour through and past Greenfield station is, of itself, an unlawful rate of speed. This train No. 3 was the fastest train on that line of railway. Doubtless that was one reason why the department required the railway company to carry the mails on it. It is within the common knowledge and observation of men in general that fast mail and express trains on the great trunk lines of railway throughout the country are habitually and usually run at a much higher rate of speed; yet no one would impute negligence to the railway companies.on that fact alone. To render such rate of speed unreasonable, some other circumstance or condition must be shown to exist, calling for a reduction of speed, a disregard of which would be inconsistent with reasonable care. We find no such condition in this case. The scaffold on which the plaintiff stood was built substantially and safely. The defendant was not chargeable with notice that the mail-bag was likely to be thrown off the car where the scaffold stood, and is not responsible for the results of the act of the postal employee in throwing it against the support of the scaffold. The regulations of

the post-office department did not require the speed of the train to be slackened at that point; and the train was running at a lawful rate of speed. Under these circumstances we cannot doubt that the proofs fail entirely to convict the defendant of any negligence which contributed to the injuries complained of; and there was nothing to submit to the jury in that behalf. The direction by the judge to the jury to return a verdict for the defendant was correct.

*By the Court.*— Judgment affirmed.