# EASTERN RAILROAD COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 134. Argued January 22, 23, 1889. — Decided February 4, 1889.

Prior to the expiration, June 30, 1877, of a written contract with a railroad company for carrying the mails, the Postmaster General, acting under provisions of law, notified the company in writing that from the day of that expiration to a day which made a term of four years, the compensation would be at rates named in the notice, "unless otherwise ordered." The company transported the mails, and accepted pay therefor at those rates, without objection. On the 1st July, 1878, the Postmaster General reduced the rates 5 per cent under the provisions of an act of Congress to that effect. The company made no objections to this, and continued to transport the mails for the rest of the term of four years, and received pay therefor at the reduced rates. They then brought suit to recover the amount of the reduction made after July 1, 1878; *Held*,

(1) That there was no contract to carry the mails for four years at fixed rates;

(2) That the company might have refused to transport them at the reduced rates;

(3) That its failure to do so and the absence of a protest constituted an assent to the rates fixed by the reduction.

THE case was stated thus by the court in its opinion.

The claim upon which this action is brought is for the balance alleged to be due the appellant for carrying the mails of the United States on certain routes, between July 1, 1878, and June 30, 1881.

It appears from the findings of fact that this company, for some years prior to March 31, 1877, carried the mails on each one of thirteen routes, under written contracts with the Postmaster General prescribing the compensation it was to receive for such services. The last one of these contracts was made March 31, 1874, and covered the period beginning January 1, 1874, and ending June 30, 1877. This contract was made subject to the provisions of the act of March 3, 1873, 17 Stat. 558, c. 231; Rev. Stat. § 4002, which authorized and directed

the Postmaster General to readjust the compensation thereafter to be paid for the transportation of mails on railroad routes, the pay per mile per annum, not to exceed certain rates, graduated by the average weight of the mails carried "to be ascertained in every case by the actual weighing of the mails for such a number of successive working days, not less than thirty, at such times after June 30, 1873, and not less frequently than once in every four years, and the result to be stated and verified in such form and manner as the Postmaster General may direct."

By an act approved March 3, 1875, 18 Stat. 341, c. 128, the Postmaster General was directed to have the mails weighed by the employés of the Post Office Department, and to have the weights stated and verified to him by them, under such instructions as he considered just to the department and to the railroad companies. Subsequently, by an act approved July 12, 1876, that officer was "authorized and directed to readjust the compensation to be paid from and after July 1, 1876, for transportation of mails on railroad routes by reducing the compensation to all railroad companies for the transportation of mails ten per centum per annum from the rates fixed and allowed" by the first section of the act of March 3, 1873. The same act provided that railroad companies, whose railroads were constructed in whole or in part by a land-grant made by Congress on the condition that the mails should be transported over their road at such price as Congress should by law direct, shall receive only eighty per centum of the compensation authorized by the act of July 12, 1876, 19 Stat. 78, 79, c. 179; Richardson's Suppl. Rev. Stat. 224.

The company was paid according to the terms of the contract of March 31, 1874, up to and including June 30, 1877.

Prior to February 1, 1877, the Postmaster General sent to claimants, for each of the routes covered by its contract with the United States, a "railroad-distance circular," and, prior to April 16, 1877, a "railroad-weight circular;" the object of the first circular being to obtain accurate information for the use of the department in regard to the length and location of the plaintiff's road, and that of the last being to obtain a state-

ment of mail matter conveyed by it. The information called for by these circulars having been furnished, the Postmaster General, December 20, 1877, readjusted the compensation to be paid for carrying the mails over the routes in question, giving due notice thereof to the sixth auditor and to the railroad company. That order was in this form : "Authorize the Auditor of the Treasury for the Post Office Department to pay the Eastern Railroad Company, quarterly, for carrying the mail between · and from July 1, 1877, to June 30, 1881, at the rate of $ per annum (being $ per mile per annum), unless otherwise ordered, subject to fines and deductions." On the same day the Postmaster General sent to the company a circular notice of adjustment of pay for each route in this form : " The compensation for the transportation of mails, etc., on your road, route between and , has been fixed from July 1, 1877, to June 30, 1881, (unless otherwise ordered,) under acts of March 3, 1873, July 12, 1876, upon returns showing the amount and character of the service for thirty days, commencing April 16, 1877, at the rate of per annum; being $ per mile for miles." The compensation thus fixed was the maximum authorized by the act of 1873, as amended by that of 1876.

By the first section of the act of June 17, 1878, making appropriations for the fiscal year of the Post Office Department for the year ending June 30, 1879, and for other purposes, the Postmaster General was " authorized and directed to readjust the compensation to be paid from and after the first day of July, 1878, for transportation of mails on railroad routes by reducing the compensation to all railroad companies for the transportation of mails five per centum per annum from the rates for the transportation of mails, as the basis of the average weight fixed and allowed " by the first section of the act of July 12, 1876, 20 Stat. 140, c. 259 ; Richardson Suppl. Rev. Stat. 359. On the 12th of July, 1878, that officer readjusted the compensation to be paid to the appellant for the transportation of mails on said routes after July 1, 1878. Of this readjustment due notice was given to the company and to the Auditor of the Treasury for the Post Office Department. The

notice to the Auditor was in this form: "Authorize the Auditor to decrease the pay of the Eastern Railroad Company for carrying the mails between        and        from July 1, 1878, to June 30, 1881, at the rate of        per annum, leaving the pay from that date        per annum (being        per mile,) being a reduction of five per centum from the rates fixed for weight of mails in accordance with the act of June 17, 1878." The notice to the company was in this form: "Please take notice that the Auditor of the Treasury for this Department has been directed to decrease the pay of your company for the conveyance of the mails on Route 9, between Portland and Portsmouth, from July 1, 1878, to June 30, 1881, $558.19 per annum, leaving the pay from the first-named date $13,233.55 per annum, being a reduction of five per centum from the rates fixed for weight of mails in accordance with the provision of the act of June 17, 1878."

In 1879, the Postmaster General, upon the application of the railroad company, caused the mails on the route between Portland and Boston to be re-weighed. That re-weighing resulted in an order, August 26, 1879, considerably increasing the compensation previously directed to be paid, but still it was five per cent less than it would have been under the order of December 20, 1877, unaffected by the reduction made by the order of July 12, 1878.

For carrying the mails on all the routes in question, from July 1, 1877, to June 30, 1881, both inclusive, the railroad company received compensation in conformity with the above orders of the Postmaster General; that is, from July 1, 1877, to June 30, 1878, according to the orders and notice of December 20, 1877, and from July 1, 1878, to December 30, 1881, according to those orders as modified July 12, 1878, and August 26, 1879.

The difference between the amounts actually paid to the claimant, under all of said orders, and the amount it would have received under the order of December 20, 1877 — if it was not bound by the order of July 12, 1878, making the reduction of five per cent — is $5926.56, the amount claimed in the petition.

It does not appear that the company, at any time before the commencement of the action, made any protest against or objection to the readjustments of its compensation made by the Postmaster General.

*Mr. A. J. Willard* for appellant. *Mr. William E. Earle* and *Mr. James L. Pugh, Jr.*, filed a brief for same.

*Mr. Attorney General* and *Mr. Assistant Attorney General Howard* for appellees.

MR. JUSTICE HARLAN delivered the opinion of the court. After stating the case he continued.

After the first of July, 1877, the company was under no legal obligation to carry the mails. It carried them after that date under an implied contract that it should receive such compensation as was reasonable, not exceeding the maximum rates prescribed by Congress, and subject to a readjustment of rates as required by the act of 1876. Such readjustment took place on the 20th of December, 1877. If the order made by the Postmaster General on that day, fixing certain rates, upon the basis of a reduction of ten per cent, for carrying the mails, from July 1, 1877, to June 30, 1881, and its acceptance by the railroad company, constituted an express contract, in respect to the compensation to be paid to it, still, as, by the terms of both the order and the notice, those rates were to govern, "unless otherwise ordered," there is no ground for the company to complain of the subsequent reduction of five per cent. This reservation of power in the Postmaster General opened the way for him to exercise the authority conferred, and to conform to the direction given, by the act of 1878. It cannot be said that the reduction of five per cent was a violation of that contract; for, according to its terms, the parties agreed that the rates fixed at the latter date were subject to such future orders as the Postmaster General might make. We do not mean that the railroad company was bound to continue the carrying of the mails, if subsequent changes in the rates were

unreasonable or did not meet with its assent. On the contrary, it was at liberty, when the five per cent reduction was made, to discontinue their transportation on its cars.

Chief Justice Richardson, speaking for the Court of Claims, properly said that the order for the reduction under the act of 1878, and the notice thereof to the company, "constituted an offer on the part of the Postmaster General which the claimant might decline or accept at his pleasure." Having received the reduced compensation without protest or objection, it may be justly held to have accepted that offer.

It is a mistake to suppose that these views are inconsistent with the decision in *Chicago &c. Railway Co.* v. *United States*, 104 U. S. 680, 684. It was there held that the act of 1876 should not be construed as affecting the rights of a railroad company under a contract for transporting the mail which was in all respects valid under the laws in force when it was made; that the language of the acts of 1875 and 1876 "may well be satisfied by confining them to cases where no time contracts for service were then in existence, and to contracts thereafter to be entered into;" and that this did not legitimately apply to contracts then existing, whose terms had not expired. That case differs from the present one in the important particular, that in the former the company bound itself to carry the mails during a certain period, and, consequently its acceptance from time to time, during that period, of less than it was entitled to demand did not prejudice its right to claim what was legally due under its contract; whereas, in the present case, the company could have declined to accede to the readjustments of rates when they were made.

We perceive no error in the judgment, and it is therefore

*Affirmed.*