Boston Insurance Company, Appellant, v. The Chicago, Rock Island & Pacific Railway Company, Appellee.

Railway Company; AGENT OF GOVERNMENT: RELATION TO INDIVID-
1 UAL. A railway company is the agent of the government in carrying the mails; is neither a common nor private carrier for the individual; nor is the company a bailee of the individual, nor does the relation of master and servant exist.

**Same:** CONTRACT OF: INTEREST OF INDIVIDUAL IN. The contract of the railway company for carrying the mails is with the government, and the individual sender of mail has no such direct interest as will give him a right of action on the contract.

**Same:** PUBLIC AGENCY. The law makes the railway company a public agency, and it is not liable to the individual.

**Same:** DUTY OF: NEGLIGENCE. The duty of the railway company in carrying the mail is to furnish suitable cars and a sufficient number of competent employes, and unless the negligence charged is a failure to perform any one of these duties, a cause of action is not stated.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

THURSDAY, OCTOBER 30, 1902.

ACTION to recover the value of a registered mail package which the defendant, as one of the agencies of the government, for carriage of its mails, undertook to carry from Kansas City, Mo., to Kinsley, Kan., and which it is claimed was destroyed by fire in a wreck at Volland, Kan., caused by the negligence of defendant's employes. The Bankers' Mutual Casualty Company paid the loss to the owner of the package; and plaintiff, who had reinsured the loss, repaid the amount thereof to the casualty company, and as assignee of said company, and by reason of a claim of subrogation, seeks to recover the amount paid, from the defendant. The defendant demurred to the petition, and its demurrer was sustained, and judgment was rendered against plaintiff for costs. Plaintiff appeals.— *Affirmed.*

*Dale & Allen* for appellant.

*Carroll Wright* and *John I. Dille* for appellee.

DEEMER, J.—Defendant, a corporation organized under the laws of this state for the purpose of operating a

railway, was in March of the year 1899 maintaining a line of road in the state of Kansas, and was carrying the United States mail in its passenger trains operated over said road, pursuant to the following notice:

"Post-Office Department. Office of the Second Assistant Postmaster. General Railway Adjustment Division. Washington, D. C., Sept. 30 1898. Sir: The compensation for the transportation of mails," etc., "on route No. 155,075, between St. Joseph, Mo., and Liberal, Kansas, has been fixed from July 1st, 1898, to June 30th, 1902, under acts of March 3, 1873, July 12, 1876, and June 17th, 1878, upon returns showing the amount and character of the service for thirty successive working days, commencing April 5, 1898, at the rate of", etc.; " * * * and pay is also allowed for the use of R. P. O. cars from July 1, 1898, at the rate of," etc. " * * * This adjustment is subject to future orders and to fines and deductions, and is based on a service of not less than six round trips per week. Very respectfully, W. S. Shallenberger, 2d Asst. P. M. General.

"Mr. W. G. Purdy, V. Pres. Chicago, Rock Island and Pacific Railway Co., Chicago, Ills."

On the 16th day of March, 1899, the National Bank of Kansas City, Mo., caused a package containing $2000 in currency to be registered by and delivered to the postoffice authorities in Kansas City, Mo., for transmission in the United States mails to the Kinsley Bank, of Kinsley, Kan. This package was delivered in due course to the United States mail car operated by defendant company, and taken in charge by the mail clerks in said car for carriage to its destination. On the 17th day of March, the train, of which this mail car was a part, was wrecked at Volland, in the state of Kansas, through the negligence of defendant's employes in the construction and operation of a switch in its yards at said town, and in running the train of which the mail car was a part at too high a rate of

speed.    The Kinsley Bank was insured against loss of this
character by the Bankers' Mutual Casualty Company, and
the plaintiff reinsured the risk assumed by the casualty
company.    Plaintiff paid the loss to the casualty com-
pany, and the casualty company reimbursed the Kinsley
Bank for the amount of its loss.    The policy of insurance
issued by the casualty company contained this stipulation:
"In all cases of loss, when it shall be claimed by the
Bankers' Mutual Casualty Company that the carrier or
other party in whose custody the property may be at the
time of such loss is or may be liable, then the assured
shall, at the request of this company or its agents, assign
and subrogate all their rights and claims to this company,
to an amount not exceeding the sum paid by said com-
pany."    And in the policy issued by the plaintiff, we find
this provision:  "It is the intent of this insurance to fully
indemnify the reassured for any and all losses and dam-
ages caused by the perils insured against, but in case of
loss it shall be lawful and necessary for the reassured to
sue, labor, and travel for, in, and about the defense, safe-
guard, and recovery of the property hereby assured, with-
out prejudice to this insurance; and upon the payment of
any loss under this policy, the assured or their assigns, in
consideration thereof, agree to convey to the said Boston
Marine Insurance Co. the unincumbered title in the prop-
erty lost, as absolute owner thereof, and to render all
assistance in the recovery, reissue, or replacement of said
property, where possible."    After plaintiff had paid the
loss, it received the following instruments of assignment:

"To all persons coming into possession of a certain
package of currency, or any part thereof, shipped by the
National Bank of Commerce, of the town of Kansas City,
Mo., unto Kinsley Bank, in town of Kinsley, state of Kan-
sas, by registered mail, on March 16, 1899:  You will deliver
same to the Bankers' Mutual Casualty Co., or their order, on
presentation hereof.  Kinsley Bank, by F. B. Hine, Cashier.

"Deliver the above package to the Boston Investment Co. Bankers' Mutual Casualty Co., by A. U. Quint, Treasurer."

"State of Kansas, County of Edwards—ss.: Know all men by these presents, that we, Kinsley Bank, hereby assign, transfer, and set over unto the Bankers' Mutual Casualty Co., or their order, all our right, title, and interest in any and all of the money contained in the package shipped by registered mail on the 16th day of March, 1899, by the National Bank of Commerce, of the town of Kansas City, Mo., unto Kinsley Bank, town of Kinsley, state of Kansas, and hereby authorize the Bankers' Mutual Casualty Co., or their assigns, to maintain action in their own name to recover any or all of said money, with the same rights and powers as we ourselves could do it.  Kinsley Bank, by F. B. Hine, Cashier."

I.  The action is to recover the amount of the loss from the railway company, on the theory that it was under a duty to the Kinsley Bank to safely carry all proper mailable material properly addressed to it, and that plaintiff is either the assignee of the Kinsley Bank, or, having paid the loss, is entitled to be subrogated to the rights of that bank against the railway company.  This duty is said to arise both by statute and by contract between the United States government and the defendant company.  We must assume, for the purposes of the case, that defendant's employes were negligent both in the operation of the train and in the operation of the switch; but something more is necessary to create liability.  Actionable negligence consists not only in some careless or reckless act of commission or omission, but there must also be found a breach of duty, created or imposed by law, owing to the party injured, from him who was guilty of the negligent act. This duty may be general and owing to everybody, or it may be particular and owing to a single individual only, by reason of his peculiar position; and in every instance

the complaining party must point out how the duty arose which is charged to have been neglected. Cooley, Torts (2d Ed.) pp. 791-793. The defendant, as a common carrier of freight and passengers, was under a general duty to every one whom it undertook to serve in either capacity. It might also assume particular duties to single individuals by reason of contract relations, and the first question which arises in the case is, was it under any duty, either general or particular, to the Kinsley Bank? And if so, what was the nature of that duty?

Under authority conferred by the constitution to establish postoffices and post roads (Constitution, U. S. article 1, section 8, paragraph 7), the general government has undertaken the business of transmitting, distributing, and delivering all mail matter. It has a monopoly on·this business, which it enforces by appropriate penalties. The postoffice department is a branch of the government, and all mail matter is carried by it. With reference to railways, we find the following material provisions in the Revised Statutes of the United States:

"Sec. 3999. If the postmaster general is unable to contract for carrying the mail on any railway route at a compensation not exceeding the maximum rates herein provided or for what he may deem a reasonable and fair compensation, he may separate the letter mail from the other mail, and contract, with or without advertising, for carrying such letter mail, by horse express or otherwise, at the greatest speed that can be reasonably obtained, and for carrying the other mail in wagons or otherwise at a slower rate of speed.

"Sec. 4000. Every railway company carrying the mail, shall carry on any train which may run over its road, and without extra charge therefor, all mailable matter directed to be carried thereon, with the person in charge of the same.

"Sec. 4001. All railway companies to which the United States have furnished aid by grant of lands, right

of way or otherwise, shall carry the mail at such prices as congress may by law provide; and until such price is fixed by law, the postmaster general may fix the rate of compensation.

"Sec. 4002. The postmaster general is authorized and directed to readjust the compensation hereafter to be paid for the transmission of mail on railway routes, upon the conditions and at the rates hereinafter mentioned: First. That all the mails shall be conveyed with due frequency and speed; and that sufficient and suitable room, fixtures, and furniture, in a car or apartment properly lighted and warmed, shall be provided for route agents to accompany and distribute the mails. Second. The pay per mile per annum shall not exceed the following rates, viz: * * * "

In additon to this, congress in the year 1879 passed an act which provided that the postmaster general should in all cases decide upon which trains and in what manner mails should be conveyed. 1 Sup. Rev. St. U. S. pp. 245, 250. The Revised Satutes also provide, in substance, that all railroads or parts of railroads which are now or may hereafter be in operation are post roads, and that the post-master general shall proivde for the carrying of the mails on all roads established by law as often as he, having due regard to productiveness and other circumstances, may think proper. Revised Statutes U. S., sections 3964, 3965.

Plaintiff contends that these statutes impose on all railways the duty of carrying United States mail, while defendant argues that two classes of railroads are recognized: First, "land-grant roads;" and, second, roads which did not receive aid in that form,—and that, as to the first, there is an absolute duty resting upon them to carry the mails, and, as to the second, the matter is simply one of contract, there being no duty resting upon them in the absence of agreement. The authorities, in a measure, at least, seem to support appellee's contention. *Eastern R. Co. v. U. S.*, 129. U S. 391 (9 Sup. Ct. Rep. 320, 32 L.

Ed. 730); *Minneapolis & St. L. Ry. Co. v. U. S.*, 24 Ct.
Cl. 350; *U. S. v. Alabama G. S. R. Co.*, 142 U. S. 615 (12
Sup. Ct. Rep. 306, 35 L. Ed. 1134); *U. S. v. Central Pac.
R. Co.*, 118 U. S. 235, (6 Sup. Ct. Rep. 1038, 30 L. Ed. 173.)
But however this may be,—and we make no definite pro-
nouncement on the point,—the conclusion reached does

1. RAILWAY
company:
agent of gov-
ernment: re-
lation to
individual.

not determine the nature of defendant's duty.
The whole matter, in either event, seems to
be relegated, under certain limitations, to the
postmaster general; and he acts for and on
behalf of the general government. The duty, then,
whether created by statute or arising out of contract, is to
the government; and railroad companies, in carrying the
mails, are agents of the government, in the exercise of a
public function. Neither the sender nor the addressee of
mail matter has any contract with the railway company;
nor does the one deliver to, nor the other receive such
matter from, the railway company. The railway company
does not carry for individuals, nor receive any compensa-
tion from them. Letters and packages are inclosed in
government mail bags, secured by locks provided by the
government, taken in charge by agents of the government,
delivered by these to other agents of the government in
cars of such character as the general government requires,
handled by government agents within these cars, and by
them delivered to other agents of the government for
transmission or delivery to the addresses. Mailable matter
is at all times in charge of government appointees or con-
tractors. Railroads, as carriers of the mail, have no know-
ledge of the contents of the mail sacks, and no authority
or right to control these sacks, except to obey the instruc-
tions of the postoffice department. In so far as they
handle the mail, they are simply instrumentalities of the
government for the performance of a public function, and
are neither common nor private carriers for the government
or the individual. There is no contract between the carrier

and the individual, and no duty owing from the one to the other, except as that other is an integral part of the whole people. There is no privity whatever between the individual and the railway company in the carriage of mail, and as the railway has no control thereof, and cannot direct as to how it shall be handled, while on the train, it would b e most unjust to hold it responsible to the individual addressee. Manifestly, the railway is neither a common nor a private carrier for the individual. It neither receives nor undertakes to deliver any of the letters or packages carried over its line. They are received by the government or its agents, which undertakes to deliver them at their destination. The railway company is not, as we understand it, a bailee of the matter carried by it; that is, a bailee in the ordinary sense. Neither the sender of the letter nor the government delivers mail to the railway company. It is at all times in charge of officers and agents of the government. The railway company simply has charge of the car in which the mails are carried, and its responsibility with respect thereto is to the general government. *Muster v. Railroad Co.*, 61 Wis. 325 (21 N. W. Rep. 223, 50 Am. St. Rep. 141). Nor do we think the relation of master and servant exists between the sender or addressee of mail matter and the railway company. To the existence of this relation it is necessary that the master (the individual) have complete control of the servant (the railway company); that is, that he have the right to say not only what shall be done, but how it should be accomplished. These elements are not present in the case now before us.

II. Defendant's liability, then, must be predicated upon contract, or arise out of a duty created by statute. The contract in this case was made by the general government for the benefit of the public, and mediately for individuals, and not distributively for individuals and indirectly for the public. The

2. SAME: contract of; interest of individual in.

Kinsley Bank was a stranger to this contract., and it was not made for its benefit.   True, it had an indirect interest in the performance of the contract, as had all who had occasion to use the mails being carried over defendant's line of road, but this interest was not sufficient to constitute a privity, which must exist, either directly or by substitution, in order to give it a right of action upon the contract. *Parker v. Jeffrey*, (Or.) 37 Pac. Rep. 712);  *German State Bank v. Northwestern Water & Light Co.*, 104 Iowa, 717; *Davis v. Waterworks Co.*, 54 Iowa, 59; *Becker v. Waterworks*, 79 Iowa, 419.   It is clear, we think, there can be no action against the defendant founded upon contract.

III.   We are also constrained to hold, as heretofore indicated, that defendant, in carrying the mails, is neither a private nor a common carrier.   It owed no duty to the sender or to the addressee of mail matter.

3. SAME: public agency.

The law has made it an instrumentality of government for the performance of acts in execution of functions assumed and controlled by it.   It receives its compensation from the government, and, at most, is a public agent or agency, discharging public duties.   What is the liability of such an officer or agent?   If it owes no duty to the individual, it incurs no liability to him, even though the individual may have been injured by its action or nonaction.   And the mere fact that an individual has sustained injury by reason of the act of a public officer is not enough to create a right of action in that individual. *Moss v. Cummings*, 44 Mich. 359 (6 N. W. Rep. 843); *Butler v. Kent*, 19 Johns. 223 (10 Am. Dec. 219); *State v. Harris*, 89 Ind. 363 (46 Am. St. Rep. 169).   To sustain a right of action by a private individual as against a public officer, it must not only appear that the duty violated was one owing to individuals, but the individual must show some reason why he singles himself out as the party injured.   *Moss v. Cummings, supra.*   Governmental duties in the exercise of constitutional powers are owing to the

public; and, as a general rule, no public officer or agency charged with the exercise of governmental functions, such as are involved in this case, can be called upon to answer in a private action for the manner in which that authority has been exercised. But in some cases, if the duty is purely ministeri l, and is one in which individuals have a special interest, they may be lia le for neglect or default in the performance of such duty. Even where this exception prevails it must be shown that the party sought to be charged was himself guilty of some neglect of duty to the individual, and he cannot be char ed with the negligence or default of his agent necessarily employed in the work. *Mersey Docks v. Gibbs,* 11 H. L. Cas. 686; *Walsh v. Trustees,* 96 N. Y. 427. In other words, the maxim *respondeat superior* does not obtain. A public offic r or agent who has exercis d ordinary care in the selection of competent subordinates is not responsible for the misfeasance or positive wrongs, or for the nonfeasance or negligence, of these subordinates properly employed by or under him in the discharge of his official duties. *Robertson v. Sichel,* 127 U. S. 507 (8 Sup. Ct. Rep. 1286, 32 L. Ed. 203). To charge a public officer f.r the negligent performance of a ministerial duty, it must appear not only that the individual has a distinct and direct interest in its performance, but also a legal right to require its performance. Hence, when the duty is one owing solely to the public, although the individual may have a mediate interest therein, no liability is incurred to the individual, however much he may be injured. *Eslava v. Jones,* 83 Ala. 139 (3 South. Rep. 317, 3 Am. St. Rep. 699). This rule, also, has some exceptions, which find place under the maxim, "*Sic utere tuo,*" etc. But none of these exceptions apply to this case.

These rules and exceptions will harmonize and fully explain most, if not all, of the cases cited by counsel. Thus a postmaster or clerk who personally receives a letter

from an individual owes that individual a duty, and is liable for its nonperformance, or for his negligent acts in connection therewith. This is because he becomes, in a sense, a bailee for the time being of the person from whom he receives it. And the same rule obtains when the postma ter, clerk, or carrier receives a letter or package for delivery to a private individual. See *Christy v. Smith*, 23 Vt. 663; *Ford v. Parker*, 4 Ohio St. 576; *Coleman v. Frazier*, 4 Rich. Law, 146; *Maxwell v. McIvoy*, 2 Bibb, 211; *Fitzgerald v. Burrill*, 106 Mass. 446; *Raisler v. Oliver*, 97 Ala. 710 (12 South. Rep. 238, 38 Am. St. Rep. 213); *Sawyer v. Corse*, 17 Grat. 230 (99 Am. Dec. 445); *Railroad Co. v. Lampley*, 76 Ala. 357 (52 Am. St. Rep. 334); *Joslyn v. King*, 27 Neb. 38 (42 N. W. Rep. 756, 4 L. R. A. 457, 20 Am. St. Rep. 656). A railway mail or pos al clerk is also held to be a passenger while riding on trains, and entitled to protection as such. This is because he is rightfully on the train, and personally entitled to all the rights of a passenger. *Railroad Co. v. Derby*, 14 How. 486 (14 L. Ed. 502); *Seybolt v. Railroad Co.*, 95 N. Y. 563 (47 Am. St. Rep. 75); *Magoffin v. Railway Co.*, 102 Mo. 540 (15 S. W. Rep. 76, 22 Am. St. Rep. 798); *Mellor v. Railway Co.*, 105 Mo. 455 (16 S. W. Rep. 849, 10 L. R. A. 36); *Railway Co. v. Hampton*, 64 Tex. 427; *Railway Co. v. Wilson*, 79 Tex. 371 (15 S. W. Rep. 280, 11 L. R. A. 486, 23 Am. St. Rep. 345); *Railway Co. v. Ketcham*, 133 Ind. 346 (33 N. E. Rep. 116, 19 L. R. A. 339, 36 Am. St. Rep. 550); *Baltimore & O. R. Co. v. State*, 72 Md. 36 (18 Atl. Rep 1107, 6 L. R. A. 706, 20 Am. St. Rep. 454); *Lawton v. Waite* (Wis.) 79 N. W. Rep. 321, 45 L. R. A. 616). But see, in this connection, *Price v. Railroad Co.*, 113 U. S. 218 (5 Sup. Ct. Rep. 427, 28 L. Ed. 980).

IV. If, then, the doctrine of *respondeat superior* does not apply,—and we think it does not,—defendant, if responsible at all, is liable only for its own personal neligence. That is to say, it must be shown that the corporation itself

did or neglected to do some act which was required of it in
the exercise of ordinary care.    If the defend-

**4.  Same: duty
     of: negli-
     gence.**

ant were an individual, instead of a corpora-
tion, the case would not be difficult of solution;
but as it is a corporation, and can act only through agents,
there is always some difficulty in determining whether or
not the act complained of was its act or the act of a mere
subordinate.    If it used ordinary care to supply suitable
cars and a sufficient number of competent employes for
the work, it fulfilled its duty and it is not liable for the
negligence of subordinate employes to whom it must of
necessity delegate its work.    Now, the negligence charged
is not a failure to perform any of these duties, but the
neglect and default of its employes charged with the oper-
ation of trains and care of switches.    The work required
of these subordinates could all be properly delegated, and
none of these employes were vice principals.    They were
not, in the work they were performing, the *alter ego* of
the defendant.    Even if the rules contended for by appel-
lant are to be applied, we do not think a cause of action
is stated.

Our conclusions find some support in *Conwell v. Voo-
hees*, 13 Ohio, 523 (42 Am. Dec. 206); *Hutchins v. Brackett*,
22 N. H. 252 (53 Am. Dec. 248).    The only case directly in
point is *German State Bank v. Minneapolis St. P. & S.
Ste. R. Co.*, (C. C.) 113 Fed. Rep. 414, which we under-
stand has recently been affirmed by the United States Cir-
cuit court of appeals for this circuit.    That case is in line
with our holding, and we approve of the reasoning therein.

These conclusions render it unnecessary that we con-
sider the other points made by appellee regarding plain-
tiff's right to recover.

The ruling on the demurrer was right, and the judg-
ment is AFFIRMED.