## HERMAN E. DAVIDSON *vs.* JAMES R. NICHOLS & another.

The sale of an article in itself harmless, and which becomes dangerous only by being used in combination with some other article, without any knowledge by the vendor that it is to be used in such combination, does not render him liable to an action by one who purchases the article from the original vendee, and who is injured while using it in dangerous combination with another article; although by mistake the article actually sold is different from that which is intended to be sold.

TORT. The declaration averred that " the defendants were wholesale chemists and druggists, and engaged in selecting, preparing, compounding and vending chemical substances, and held themselves out as possessed of competent skill and knowledge for the transacting of such business ; that A. & D. D. Geyer of Gloucester, who were well known by the defendants to be retailing druggists, applied to the defendants for a well known chemical substance called black oxide of manganese, intending to purchase the same; but the defendants negligently and unskilfully furnished and sold to A. & D. D. Geyer, for and instead of the black oxide of manganese, a certain quantity of a chemical substance known as the sulphide of antimony, resembling black oxide of manganese in its external appearance, the said sulphide of antimony and black oxide of manganese being respectively crude substances obtained from the earth, and after being separated from foreign substances sold in their natural state as they are imported, and not compounded or prepared in any way after importation ; and said defendants represented the same to be black oxide of manganese, and the said Geyers, relying upon th skill and judgment of the defendants, thereupon sold and delivered to the plaintiff the said sulphide of antimony without opening the package or examining the same, the said Geyers and the plaintiff both having been induced to believe by the conduct of the defendants, and actually believing, that the same was black oxide of manganese ; that the plaintiff, still believing said substance to be the black oxide of manganese, proceeded to use the same in combination with chlorate of potassia, a substance with which said oxide might be safely and properly used, but from

the combination of which with sulphide of antimony a danger-
ous explosion follows; that by reason of such use and combina-
tion, although care which would have been sufficient had the
article been what it was described was used by him, a dan
gerous explosion was caused, and the plaintiff by such explo-
sion was greatly injured in his person, to wit, in his head and
sense of hearing, and in his property, to wit, in his dwelling-
house, furniture, works of art and wearing apparel, and sus-
tained great damage thereby; the same being wholly caused by
the aforesaid negligent and careless act of said defendants in
putting up, furnishing and sending into the market for sale said
sulphide of antimony with the incorrect representation lawfully
confided in by others that the same was the black oxide of
manganese."

The defendants demurred to the declaration, and the demurrer
was sustained in the superior court, and judgment rendered
thereon for the defendants; and the plaintiff appealed to this
court.

*S. B. Ives, Jr. & S. Lincoln, Jr.*, for the defendants.

*S. H. Phillips*, for the plaintiff. The case of *Thomas* v. *Win-
chester*, 2 Selden, 397, covers the principles relied on in this case.
The facts stated in the declaration show a wrongful act of the
defendants, in consequence of which the plaintiff was injured;
and by well established principles the defendants are liable to
the plaintiff therefor. This action is in tort, and in such cases
ι direct remedy is given to the injured party against the wrong-
doer. See *Scott* v. *Shepherd*, 2 W. Bl. 892; *Vaughan* v. *Menlove*
3 Bing. N. C. 468; *Lynch* v. *Nurdin*, 1 Q. B. 29; *Dixon* v. *Bell*,
5 M. & S. 198; *Vandenburgh* v. *Truax*, 4 Denio, 464; *Illidge*
*Goodwin*, 5 C. & P. 190. The wrongful act of the defendants
in the present case was an act dangerous to the whole com-
munity, and in such case one who sustains a special injury may
recover therefor. *Duncan* v. *Thwaites*, 3 B. & C. 556. And in
all the cases acts of gross negligence, as well as acts positively
unlawful, render the defendant liable. No privity of contract
need be proved, because the action is not brought on a contract.
It makes no difference whether the article sold under a false

name was crude and sold by the defendants in the state in which it was received by them, or whether it was changed and prepared by them. The wrongful act consists in sending the article into the community under a false name, for the correctness of which the public and the plaintiff relied upon the skill and reputation of the defendants. See also *Farrant* v. *Barnes,* 11 C. B. (N. S.) 553 ; *Brass* v. *Maitland,* 6 El. & Bl. 470.

BIGELOW, C. J. The substance of the averments of the declaration in this action is, that the defendants, being druggists and chemists, sold and delivered to certain persons an article which the defendants supposed to be black oxide of manganese, but which was in fact sulphide of antimony ; that this mistake arose from the negligence and want of skill of the defendants ; that the person to whom the article was sold by the defendants, acting on the belief that it was the oxide of manganese, resold it to the plaintiff; that he, influenced by the same belief, mixed it with chlorate of potassia ; and that thereby a dangerous and explosive substance was created, which exploded and caused great injury and damage to the person of the plaintiff and to his property. From these averments it appears that the plaintiff did not enter into any contract, directly or indirectly, with the defendants. The plaintiff obtained the article by a sub-sale from those to whom the defendants had previously sold it. There was therefore no privity between the plaintiff and the defendants. It is not alleged that the defendants were guilty of any false or fraudulent representations concerning the article sold by them. There is no averment that the article was of itself dangerous, but on the contrary the implication from the allegations is that it was harmless and innocuous, and only becomes explosive and dangerous by being compounded with chlorate of potassia ; nor is it averred that the defendants had any knowledge that the article was bought of them to be resold to the plaintiff, or that they had any notice or information of the purpose for which it was to be used, or that it was intended to compound it with any other substance.

This statement of the facts averred in the declaration, and of the omission to insert therein other and additional allegations,

makes it clear that no valid cause of action against the defendants is set forth. Plainly there is no liability to the plaintiff *ex contractu.* Whenever a wrong or injury results from the breach of a contract merely, an action for redress, whether in form *ex contractu* or *ex delicto*, can be maintained only by a party to the contract. The obligation and duty arising out of a contract are due only to those with whom it is made. If the rule were otherwise and no privity of contract were required to sustain an action for a breach, there would be no limit to the liability which might be incurred by a contracting party. It would extend so as to give a right of action to all persons, however remote from any connection with the original parties to a contract, or however numerous they might be, who happened to sustain a loss or suffer an injury attributable to a breach of the stipulations into which a contracting party had entered. For example, the builder of a railway carriage, if an accident should happen through a defect in its construction occasioned by a breach of the agreement under which it was built, might be held liable to each passenger who sustained an injury in his person or property in consequence of such defect. So in every case the liability of a manufacturer or vendor of an article might be extended and multiplied indefinitely, if he could be held responsible to all persons who were able to trace back their losses or injuries to some carelessness or breach of duty towards the party with whom he had originally contracted to make or to sell the article. But the rules of law do not sanction a doctrine which leads to consequences so unreasonable and dangerous. Privity of contract is an essential element in the maintenance of an action founded on a breach of contract. When this does not exist, no action *ex contractu* can be sustained.

We think it equally clear that the plaintiff shows no cause of action *ex delicto* against the defendants. The insuperable difficulty is, that the averments in the declaration do not disclose any duty or obligation which rested on the defendants towards the plaintiff in the sale of the article to the persons from whom the plaintiff purchased it. As has been already stated, it was an innocuous substance, which became dangerous only when

used in composition with another chemical agent. It was not sold by them with any knowledge or understanding of the pur- pose for which it was intended to use it, nor did they know that it was to be resold to the plaintiff.

There being no duty imposed on the defendants towards the plaintiff arising out of any contract, this action is to be main- tained, if at all, by showing a breach of some duty or obligation imposed on them by law. They have been guilty of no action- able carelessness or negligence unless it can be shown that they were bound to use some care or caution on which the plaintiff had a right to rely. Failing to show this, or to aver a state of facts from which the law would imply it, the gist of this action, which is founded on alleged neglect and want of due care, is wholly wanting. We know of no rule or principle of law by which a vendor of an article can be held liable for mistakes in the nature or quality of the article arising from his carelessness and negligence, which causes loss or injury to other persons than his immediate vendee, where there has been no fraudulent or false representations in the sale, and the article sold was in itself harmless ; especially where the sale is made without any notice to the vendor that the article is bought for a third person, or that it is intended to be used in combination with other substances which may make it dangerous or injurious to persons or prop- erty. In such a case a vendor assumes no responsibility and incurs no liability beyond that which results from his contract with his vendee. With remote vendees of the article, who pur- chase it by sub-sales from those to whom it was originally sold, he enters into no contract, either express or implied, and takes on himself no obligation or duty whatever. Nor has he done any wrongful or illegal act towards third persons, for the conse- quences of which he is liable. The general principle applicable to this class of cases is, that a vendor takes on himself no duty or obligation other than that which results from his contract. For a breach of this, he is liable only to those with whom he contracted. All others are strangers. The law fastens on him no general or public duty arising out of his contract, for a breach of which he can be held liable to those not in privity with him.

No case has been cited by the counsel for the plaintiff which contravenes these doctrines, or which lends any countenance to the support of the present action. In *Scott* v. *Shepherd*, 2 W. Bl. 892, and *Vaughan* v. *Menlove*, 3 Bing. N. C. 468, the defendants were guilty of unlawful or careless acts, the immediate and direct consequences of which were injurious to the plaintiffs. The same is true of *Lynch* v. *Nurdin*, 1 Q. B. 29; a case which to its full extent can hardly be supported. The ground of liability there was the careless act of the defendant in leaving his cart unattended in the street, by which a young child who climbed into it was injured. So in *Dixon* v. *Bell*, 5 M. & S. 198, the defendant was guilty of negligence in intrusting a loaded gun to a young child incompetent to take care of it, in whose hands it was discharged, and the child of the plaintiff was shot. It was there held that the injury was the direct result of the defendant's carelessness. *Illidge* v. *Goodwin*, 5 C. & P. 190, and *Vandenburgh* v. *Truax*, 4 Denio, 464, were decided on the same ground. No one of these cases arose out of a mistake or carelessness in the performance of a contract, or in the sale and delivery of goods, whereby injury was sustained by persons other than the parties to the contract and sale. They are founded on acts which were either unlawful or careless, from which immediate injury was caused to the plaintiffs. The cases most nearly resembling the present action are *Langridge* v. *Levy*, 2 M. & W. 519, and *Thomas* v. *Winchester*, 2 Selden, 397. But they are clearly distinguishable. In *Langridge* v. *Levy* the defendant was held liable on the ground that he sold an article of a dangerous character under false and fraudulent representations, with a knowledge that it was to be used by the plaintiff. There a distinct fraud was committed on the plaintiff, in consequence of which the injury happened. In *Thomas* v. *Winchester* the defendant had put up in a bottle a deadly poison to which he had affixed a label describing it as a harmless medicine, and had sent it into the market for sale. That case was put on the ground that the article itself was dangerous to human life; that sending it into the market with a description or name by which persons would be deceived and led to suppose that it was

harmless, was an act of criminal carelessness, and that the labe operated as a continuous representation that the article was such as thereby named and described, and that the defendant was therefore immediately responsible for the injury to the plaintiffs. So the case at bar is distinguishable from actions brought against persons acting as surgeons or apothecaries for injuries inflicted on patients under their care. In such cases, although the contract of employment may not be made with the person injured, nevertheless the patient suffers directly and immediately from the acts of the party who treats him carelessly or un- skilfully.

The views which we have taken of the rights of the parties to this action are supported by the decisions in *Winterbottom* v *Wright*, 10 M. & W. 109, and *Longmeid* v. *Holliday*, 6 Exch 761. See also Broom on Parties, 246, *et seq.*

*Demurrer sustained; judgment for the defendants.*