## GALBRAITH v. ILLINOIS STEEL CO.

(Circuit Court of Appeals, Seventh Circuit. October 13, 1904.)

### No. 1,046.

1. NEGLIGENCE—NEGLIGENT PERFORMANCE OF BUILDING CONTRACT BY SUBCONTRACTOR—LIABILITY TO OWNER.

Plaintiff, who was owner of a building, contracted with a company to install therein a sprinkler system according to plans and specifications made a part of the contract, which provided for a tank on the top of the building, having a triangular steel support. The company contracted with defendant for the construction of such support, but in the actual construction a tie member specified in the plans was omitted by defendant. The tank having been placed thereon and filled with water, to a weight of 85 tons, the support collapsed during a high wind, owing to the absence of the tie member required by the contract, and a large loss and damage resulted to plaintiff. *Held*, that plaintiff could not maintain

an action in tort to recover such loss from defendant, whose duty was measured by the requirements of the contract, and was enforceable only by the other party to the contract.

Grosscup, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Plaintiff in error (plaintiff below), owner of a six-story business block in Chicago, contracted with the Manufacturers' Automatic Sprinkler Company to install in her building a complete sprinkler system. Among other things, the sprinkler company agreed to construct on top of the building, according to plans of Ritter & Mott, engineers, a steel framework on which to stand a wooden tank of 20,000 gallons capacity. The sprinkler company contracted with defendant to erect the steel support. Defendant was given the drawings and specifications prepared by Ritter & Mott, and in making therefrom its shop plans, and in putting up the steel support, omitted a tie member—one side of the triangular top. Ritter & Mott's plans informed defendant that a tank 16 feet in diameter would rest upon the steel support, but did not disclose the height and capacity of the tank. Defendant did its work in the manner above stated, and left the building. Thereafter a tank company employed by the sprinkler company came upon the building and made and placed the tank. Then the sprinkler company connected the tank with the system of pipes and sprinkler heads throughout the building. The tank was filled and the system was maintained by plaintiff for 30 days before the accident occurred which gave rise to this controversy. The steel support weighed 5 tons; the tank and water, 85. The wind, blowing at 40 miles an hour against the tank surface, caused the structure to collapse. The evidence tends to prove that the collapse would not have happened, except for the absence of the tie member. Plaintiff paid out large sums in repairing the building and sprinkler system, in reimbursing tenants for damage to goods, and in settling personal injury claims. To recover these, she brought this action on the case against defendant. At the conclusion of her evidence the court, on defendant's motion, directed a verdict for defendant, on which was entered the judgment now sought to be reversed.

Ralph R. Bradley, for plaintiff in error.

Kemper K. Knapp, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge (after stating the facts). Plaintiff contends that defendant, outside and independently of its contract with the sprinkler company, owed her a duty to use reasonable care in constructing the steel support; that the evidence shows that defendant failed to exercise such care; that such failure was the proximate cause of her losses; and therefore that she has made out a good cause of action against defendant. And in support of her contention plaintiff cites numerous authorities.[1]

On the other hand, defendant insists that this case falls within the rule that a contractor, manufacturer, or vender is not liable to persons who have no contractual relations with him for negligence

[1] Sibley on the Right to and Cause for Action, p. 44; Enc. of Law & Procedure (section on "Actions"); Whitaker's Smith on Negligence (2d Ed.) p. 111; also page 32; Pollock on Torts (Ed. 1887) pp. 347, 350; Bickford v. Richards, 154 Mass. 163, 27 N. E. 1014, 26 Am. St. Rep. 224; Bishop on Noncontract Law, § 79; Thompson's Commentaries on the Law of Negligence, vol. 1, p. 626; Addison on Torts (Dudley & B. Ed.) p. 17; Shearman & Redfield on Negligence (4th Ed.) vol. 1, p. 23, § 22; Huset v. J. I. Case Threshing Machine Company, 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303.

in the construction, manufacture, or sale of the article he handles, and illustrates its argument by comparison with many cases.[2]

If the sprinkler company had suffered from defendant's omission of the tie member, that company could have maintained against defendant an action ex contractu, for defendant had engaged to put in the tie member, or an action ex delicto, for defendant failed to discharge a duty it had assumed to the sprinkler company. In both cases the measure of right and duty would be the same, because it would be intolerable that an action ex delicto should be maintained by one contracting party against the other on account of the complete and exact performance of the contract. If defendant owed to the sprinkler company any duty to exercise care that the completed structure should withstand the wind, then, if the contract had called for the very steel support that defendant erected, full performance of the contract would be no defense to an action ex delicto for breach of the supposititious duty. It follows that the only duty owing by defendant to the sprinkler company was to perform the contract as it was made, and that the only party who could sue defendant for a breach of the duty that was created and measured by the contract was defendant's contractee, the sprinkler company.

Plaintiff cannot recover from defendant simply by showing defendant's breach of its contract with the sprinkler company, nor simply by showing defendant's breach of its duty to the sprinkler company. There was no contract relation between the parties to this case. What duty arose from the fact that defendant went upon plaintiff's building to execute its contract with the sprinkler company? There is the general maxim of the law of negligence that one, in following his business or pleasure, shall use reasonable care to avoid injury to others. That is a duty owing from everybody to everybody. And in this case, if defendant's workmen, during the erection of the steel support, had negligently dropped a

2 Winterbottom v. Wright, 10 M. & W. 109; Collis v. Selden, 3 C. P. 495; Mayor of Albany v. Cunliff, 2 N. Y. 165; Loop v. Litchfield, 42 N. Y. 351, 1 Am. Rep. 513; Losee v. Clute, 51 N. Y. 494, 10 Am. Rep. 638; Necker v. Harvey, 49 Mich. 517, 14 N. W. 503; Daugherty v. Herzog, 145 Ind. 255, 44 N. E. 457, 32 L. R. A. 837, 57 Am. St. Rep. 204; Curtin v. Somerset, 140 Pa. 70, 21 Atl. 244, 12 L. R. A. 322, 23 Am. St. Rep. 220; Fitzmaurice v. Fabian, 147 Pa. 199, 23 Atl. 444; Heizer v. Kingsland & Douglass Mfg. Co., 110 Mo. 605, 19 S. W. 630, 15 L. R. A. 821, 33 Am. St. Rep. 482; Bailey v. Northwestern, etc., Gas Co., 4 Ohio Cir. Ct. R. 471; Burdick v. Cheadle, 26 Ohio St. 393, 20 Am. Rep. 767; Davidson v. Nichols, 93 Mass. (11 Allen) 514; Carter v. Harden, 78 Me. 528, 7 Atl. 392; McCaffrey v. Mossberg & Granville Mfg. Co. (R. I.) 50 Atl. 651, 55 L. R. A. 822; Burke v. De Castro, 11 Hun, 354; Swan v. Jackson (Sup.) 7 N. Y. Supp 821; Savings Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621; Goodlander Mill Co. v. Standard Oil Co., 63 Fed. 400, 11 C. C. A. 253, 27 L. R. A. 583; Bragdon v. Perkins-Campbell Co., 87 Fed. 109, 30 C. C. A. 567; Huset v. J. I. Case Threshing Machine Co., 120 Fed. 865, 57 C. C. A. 237, 61 L. R. A. 303; Salliotte v. King Bridge Co., 122 Fed. 378, 58 C. C. A. 466, 65 L. R. A. 620; Blakemore v. B. & E. Ry. Co., 8 El. & Bl. 1035; Barrett v. Singer Mfg. Co., 31 N. Y. Super. Ct. 545; Marvin Safe Co. v. Ward, 46 N. J. Law, 19; Marquardt v. Ball Engine Co., 122 Fed. 374, 58 C. C. A. 462; Wharton on Negligence (2d Ed.) 438.

girder on a passer-by in the street, or down through the roof and floors of plaintiff's building, Bickford v. Richards, 154 Mass. 163, 27 N. E. 1014, 26 Am. St. Rep. 224, and other decisions, would be good precedents for applying the maxim. In such a case there would be a breach of a duty that was not created and measured by the contract, and the inquiry whether defendant, on finally leaving the premises, had fully completed its contract, or had negligently failed in its duty in that regard, would be utterly irrelevant.

But plaintiff's case requires her to assert that defendant owed her the duty to use reasonable care to see to it, before leaving the job of erecting the steel support, that the final structure would not be apt to be blown over on account of the lack of the proper number of steel girders to make it safe. If such a duty existed, it would be one owing equally to the passer-by in the street, it would have being separate and apart from the duty that was created and measured by the contract between defendant and the sprinkler company, and it might or might not be coextensive with defendant's duty to the sprinkler company. If it were coextensive, it would be for the reason that defendant's contract with the sprinkler company called for such a steel support that the final structure would be reasonably safe. And since a duty cannot be shifted, defendant could not rely on the proposal of its customer, but would have to determine for itself, and at its own peril, whether or not the steel support shown in the proposed contract would in fact be sufficient to co-operate properly with the other parts of the system to make a reasonably safe final structure. If defendant's alleged duty to plaintiff were of different dimensions from those of its duty to the sprinkler company, it would be for the reason that defendant's contract with the sprinkler company did not call for such a steel support that the final structure would be reasonably safe. And in such a case defendant would be confronted with the situation that its performance of its duty to the sprinkler company would be a breach of its duty to the rest of the world.

Defendant's supposed duty to plaintiff being created by law, if at all, and therefore being absolute, and defendant's duty to the sprinkler company being of a size determinable by the contracting parties, the question of the two duties' coextensiveness is irrelevant, for, if defendant owed plaintiff the supposed duty, that duty could not be diminished or altered by defendant's contract with another. Hence, in inquiring into the origin, nature, and extent of defendant's duty to plaintiff, the irrelevancy of the terms of defendant's contract with the sprinkler company. And since the terms of the contract are immaterial, it is obvious that the question of performance is impertinent on the part of any one but the sprinkler company.

If defendant, constructor of one part, was bound to use reasonable care that the entirety, when turned over to the possession and use of a stranger, should withstand the winds, so were the builders of other parts. Take the tank company for example. It came upon the premises after defendant had gone. The fact was obvious that one side of a triangle was missing. The final effect of

putting upon that support 85 tons' weight in the form of a sail was the blowing over of the structure. If defendant were required to look beyond its contract, and to ascertain the weight of the tank that was to be furnished by another, its capacity, the weight of the water, the sail area, and the speed of the winds, in order to determine whether the final and completed structure would be safe, it would be equally just to require the tank company to figure (and with reasonable accuracy, at its peril) on the tensile and torsional strength of steel, and the adequacy of the designs for the support on which it engaged to set its tank. If the law should hold all the builders and makers and doers in the land to a particular duty to their contractees, and at the same time to another absolute duty to use care that the thing shall be innocuous as it passes through the hands of all mankind—a duty separate and distinct from the first, which might or might not be coextensive with the first, but, whether so or not, unavailing to avoid the second—we fancy few persons would be willing to do business, in the face of the insufferable litigation that would ensue. True, the common law—that inexhaustible fount, of which the taps are in the hands of the courts—might have been turned to watering plaintiff's contention; but we think it evidence of the perception of a sound public policy that the courts, with virtual unanimity, have refrained from opening the gates.

To the rule there are exceptions. One must not, knowingly or unknowingly, fail to exercise care in the preparation or sale of an article intended to affect human life. One must not knowingly send out an instrumentality which is imminently and immediately dangerous, without notice of its nature and qualities. From the steel support, as defendant left it, no danger threatened. None came from it immediately, but only through additions and acts of the tank company, the sprinkler company, and plaintiff. This case is not within the exceptions. And furthermore the subsequent and independent intervening acts of the tank company, the sprinkler company, and plaintiff saved defendant's omission of the tie member from being the proximate cause of the accident.

GROSSCUP, Circuit Judge (dissenting). I cannot concur in the conclusions reached, but have time only to outline, in the most general way, the ground for my dissent.

I do not base my dissent on the proposition that defendant owed the plaintiff any general duty, irrespective of his contract with the Sprinkler Company, to see to it that the structure designed by the architects was reasonably safe. I build my view of plaintiff's right of action solely on defendant's failure to put in the tie member of the triangle called for in the plans, and solely because it was called for in the plans, a failure that confessedly caused the injuries. Upon this predicate let me briefly restate the salient facts.

Plaintiff had a contract with the Sprinkler Company to install in her building a sprinkler system according to certain plans and specifications made a part of the contract between them. The plan specified a steel triangular support for the tank, including, specific-

ally, the tie member. In actual construction the tie member was left out. The collapse followed—followed as the direct result of the omission. Now one thing seems quite sure: The plaintiff would have had, in some form, a right of action against the Sprinkler Company for the damage resulting; for the inclusion of the tie member was in the contract between them, and the Sprinkler Company was bound to see that the contract was performed. Another thing seems certain: The Sprinkler Company would have had, in some form, a right of action against the defendant for the loss to which it would thus be subjected; for the inclusion of the tie member was in the contract between the Sprinkler Company and the defendant, and the defendant was bound to perform that contract. Thus, by circumlocution at least, plaintiff's losses eventually would have reached the defendant, through a train of legal proceedings that, practically, would have made the defendant directly responsible to the plaintiff for the losses suffered. I am very much inclined to think that in such a case, where defendant is thus obligated to the Sprinkler Company, and the Sprinkler Company to the plaintiff, there exists such privity of contract as would give the plaintiff a direct right of action, ex contractu, against the defendant.

But I do not rest my conclusion upon the existence of privity of contract. In matters involving, as these contracts did, the personal and property safety of others than the immediate parties to the contracts, there is, it seems to me, a duty raised to take reasonable care that the contract obligations are carried out. Public policy injects into such a relationship an obligation additional to the bare contractual obligation—an obligation running to all who are directly affected by the performance or non-performance of the contract. There is thus raised between defendant agreeing to put in an essential part of the building, according to plans and specifications, and the plaintiff affected in personal and property safety by defendant's performance of that obligation, a privity of duty that may be made the basis of an action ex delicto.

The character of modern constructions, and the minute divisions and sub-divisions that enter into them, make the existence of such privity of duty almost imperative. Where, in the old times, when the precedents relied upon were established, but two or three trades were employed in the construction of a building, a score or more are now called in. The modern structure is the work of many trades. To safely erect such structures, plans and specifications covering the whole, by competent architects, are not simply a convenience—they are a necessity. Through such plans and specifications alone, can the work of the many trades be co-ordinated. Through them alone, in the midst of diversity can the owner build to a given end. Plans and specifications, therefore, are essentially the Law of the Building. They are in practical effect, the owner's direction to the contractors—not simply to the immediate contractor, but to all who take contracts subservient thereto, a direction that each contractor by taking his contract in reality accepts; and safety and good faith demand not simply that contractors

should perform their contracts with each other, but that each contractor, by living up to the Law of the Building, should obey the direction thus given and accepted and thus perform his duty to the owner—indeed to all who may, in person or property, be directly affected by the building's being erected in accordance with the plans and specifications. To hold otherwise, it seems to me, would be to inject into the construction of modern buildings, a disjection and looseness of responsibility, so menacing to personal and property safety, that it ought not, on merely technical reasoning or antiquated precedents, to be longer tolerated.

Judgment affirmed.