E. H. EMERY & COMPANY, Appellee, v. AMERICAN REFRIGERATOR TRANSIT COMPANY et al., Appellants.

**PRINCIPAL AND AGENT: Liability of Agent to Third Parties.** An agent, in attempting to carry out his agency, may render himself liable to a *third* party, with whom he has no contract relations. For instance, a refrigerator company which contracts with a common carrier to furnish cars to the carrier and to load and ice the same is liable to a shipper for the negligent manner in which it (the refrigerator company) *attempts to carry out* its contract with the carrier.

**EVIDENCE: Reporter's Transcript—Different Suits Involving Same Parties and Issues.** A transcript of the official court reporter's notes taken on the trial of an action is admissible on the trial of a subsequent and newly brought action between the same parties, involving the same subject-matter and the same issues. (Sec. 245-a, Code Supp., 1913.)

**DEPOSITIONS: Admissibility in Subsequent and Different Action.** A deposition taken, filed, and introduced in one action is admissible on the trial of a subsequent and newly brought action between the

same parties, involving the same subject-matter and the same issues, even though said deposition is not refiled in the latter action and no preliminary leave of court is obtained for its use.

*Appeal from Wapello District Court.*—D. M. ANDERSON, Judge.

.OCTOBER 18, 1921.

REHEARING DENIED FEBRUARY 17, 1922.

ACTION at law, to recover damages claimed to have been sustained in the shipment of 19 carloads of peaches. Judgment was rendered in behalf of the plaintiff, and the defendant appeals. The garnishee also appeals, and the plaintiff files a cross-appeal, conditioned on a reversal on defendants' appeal.—*Affirmed.*

*Brammer, Seevers & Hurlbut, Fred W. Lehmann, Jr., McNett & McNett,* and *W. D. Eaton,* for appellants.

*Chester W. Whitmore,* for appellee.

FAVILLE, J.—The appellee is a copartnership, engaged in conducting a wholesale fruit business in the city of Ottumwa. The appellant is a corporation engaged in owning and operating

1. PRINCIPAL AND AGENT: liability of agent to third parties.

certain refrigerator cars, which said cars are transported on various lines of railway throughout the country. The Missouri, Kansas & Texas Railway Company is a corporation operating a line of railway in the state of Texas and other states.

In the year 1912, the appellee entered into a contract with one Gidcumb, a fruit grower at Chatterton, Texas, to purchase from the said Gidcumb his entire output of peaches. The Gidcumb orchard is situated on the lines of the Missouri, Kansas & Texas Railway, about a mile from a station known as "Orchard Park." The record discloses that, early in June, 1912, the appellee wrote to officers of the appellant regarding the securing of equipment for the transportation of fruit, and received a reply that appellant would furnish the necessary refrigerator equipment for handling the peach shipment, and that orders for cars should be placed by the appellee with the agent

of the Missouri, Kansas & Texas Railway at Chatterton, Texas, and also stating that the cars would be iced at Shreveport and re-iced at Chatterton. The appellee also received a letter from officials of the Missouri, Kansas & Texas Railway Company, advising appellee that said railway had made arrangements with the appellant to furnish cars for the handling of all fruit and vegetables moving under refrigeration. In pursuance of this arrangement, the appellee ordered cars from the said railway company as required for the shipment of the peaches in question from Chatterton, Texas. Cars were delivered and loaded with peaches shipped to the appellee.

This action was brought against the appellant, charging it with negligence in the manner in which it loaded the peaches in the said refrigerator cars, and also in the failure to properly ice said cars.

The record shows that the Missouri, Kansas & Texas Railway Company had entered into an agreement with the appellant regarding the furnishing of refrigerator cars by the appellant and the transportation of the same by the said railway company. In said agreement, the appellant herein is referred to as the "Refrigerator Company," and the Missouri, Kansas & Texas Railway Company is referred to as the "Katy Company;" and the said parties are so designated throughout this case, and will be so referred to by us. By said agreement, appellant herein agreed to handle the fruit, melon, and vegetable shipments originating on the line of the "Katy" Company. The agreement provided that the "Katy" Company should pay to the refrigerator company 12½ per cent of the "Katy" freight revenue, exclusive of switching, bridge tolls, and other terminal charges. The agreement provided that the refrigerator company should furnish to the "Katy" Company sufficient suitable cars, up to 600 in number, and as many more as it was able to furnish for transportation of fruit as needed. The contract provided that the refrigerator company (appellant) should ice cars containing perishable commodities in shipments originating on the lines of the "Katy" Company. Also, by its terms, the refrigerator company undertook the responsibility of loading all such cars, and was allowed a supervision charge therefor.

This cause involves a shipment of nineteen cars. The ap-

pellee claims that the peaches in said cars were damaged because the appellant, as agent of the said "Katy" Company under said contract with it, undertook to load, brace, stow, and ice said cars, and did the same in such a careless, negligent, and unskillful manner that a large amount of the peaches was lost and destroyed, and appellee was put to additional expense to care for and market the remainder. The appellee's cause of action was pleaded in six different counts, or on six different "theories." The only one, however, submitted to the jury was the theory of the alleged misfeasance of the appellant, as agent of the "Katy" Company under said contract, the particular misfeasance charged being in regard to the manner of loading and icing the cars in question.

I.  It is to be noticed at the outset that appellee's action is not brought against the railway company as initial carrier, nor is recovery sought under and by virtue of the so-called "Carmack Amendment," or otherwise as against the shipper. This action is against the refrigerator company, to recover damages claimed to have been suffered by the appellee because of the negligent and careless manner in which the appellant refrigerator company performed its work of loading and icing the cars in question, under its contract with the carrier, the "Katy" Company. There is no contention that there was any privity of contract between the appellant and the appellee. The action sounds in tort, if it can be maintained at all.

The question for our determination at this point is whether or not the appellee can maintain an action for damages against the appellant refrigerator company, as the agent of the railway company, for its negligence in performing its contract with the latter. It is to be observed that appellant was not a common carrier, under the circumstances disclosed in this case, and is not liable to appellee, if at all, in any such capacity. *Ellis v. Interstate Commerce Com.*, 237 U. S. 434.

Appellee's contract was with the initial carrier, the "Katy" Company. The duty of the latter company to appellee was to carry the shipment safely, and with due regard to its perishable character. *Beard & Sons v. Illinois Cent. R. Co.*, 79 Iowa 518.

Under the contract between the refrigerator company (ap-

pellant) and the "Katy" Company, the former became the agent of the latter company, and undertook, as its agent, to perform certain things required of said railway company under the contract of shipment between it and appellee.

The contention of the appellant is that the appellee has no cause of action whatever against the appellant, and that the trial court should have directed a verdict in appellant's behalf. If the question were one between the appellee and the refrigerator company, growing out of a contract between them, or were one between the refrigerator company and the railway company, whereby the latter was suing for failure to properly perform the contract between them, we would have an entirely different question from the one presented here. Assuming that there was sufficient evidence to carry the case to the jury on the question of the negligent manner in which the cars in question were loaded and iced, the pertinent question still remains: Can the appellee recover from the refrigerator company for such negligence?

The question of the liability of an agent to a third person for negligence has been frequently before the courts, and there is much confusion and lack of uniformity in the authorities. Cases have frequently arisen where the duty which the agent owed to the public, rather than to an individual, was involved, and liability determined because of such duty. In a general way, it may be said that an agent is liable to third parties for his own tortious acts, the same as any other person. The fact of the agency neither increases nor diminishes such liability. *Bannigan v. Woodbury*, 158 Mich. 206 (122 N. W. 531); *Humphreys Tun. & Min. Co. v. Frank*, 46 Colo. 524 (105 Pac. 1093); *Berghoff v. McDonald*, 87 Ind. 549; 2 Corpus Juris 824, Section 498.

In determining the liability of an agent to third parties for tortious acts directly connected with and growing out of the agency, the courts have recognized a distinction between malfeasance, misfeasance, and nonfeasance; but the line of demarcation has frequently been lost sight of, and reconciliation of the authorities is utterly impossible.

In *Bell v. Josselyn*, 3 Gray (Mass.) 309, the Supreme Court of Massachusetts says:

"Nonfeasance is the omission of an act which a person ought to do; misfeasance is the improper doing of an act which a person might lawfully do; and malfeasance is the doing of an act which a person ought not to do at all."

In *Williams v. Dean*, 134 Iowa 216, at 221, we said:

"Nonfeasance is the nonperformance of some act which ought to be performed, and misfeasance is the performance of an act in an improper manner, whereby someone receives an injury."

Applying these definitions to the instant case, we can eliminate at once the question of "malfeasance;" for there was here no doing of an act which ought not to have been done at all.

As early as 1701, in *Lane v. Cotton*, 1 Lord Raymond 646, a distinction was recognized between the liability of an agent to third parties for nonfeasance and liability for misfeasance. The distinction was made by Chief Justice Holt in a dissenting opinion in that case, but it has been made the basis of a differentiation which has been preserved with more or less consistency by text-writers and courts since that time. Some of the later cases, however, have apparently eliminated the distinction entirely. The courts recognizing this distinction hold, as a general rule, that the agent is liable to his principal for nonfeasance, —that is, for an entire failure to perform his contract with his principal; but that for such nonfeasance a third party cannot recover from the agent. This line of authorities also holds that, where the agent has undertaken the performance of his contract, and performs the same in a careless and negligent manner, and injury results to a third party, the latter may recover from the agent because of his misfeasance. To state the proposition in another way: The agent is liable to his principal for nonfeasance, and may be liable to third parties for misfeasance. As bearing on these propositions, see *Brown Paper Co. v. Dean*, 123 Mass. 267; *Murray v. Usher*, 117 N. Y. 542 (23 N. E. 564); *Greenberg v. Whitcomb Lbr. Co.*, 90 Wis. 225 (63 N. W. 93); 2 Corpus Juris 824, Section 499.

*Williams v. Dean*, supra, was an action wherein suit was brought against the officers of an agricultural society, charging them with negligence in the erection of a wire screen on the grounds of the society. The plaintiff, a spectator at a ball

game, was injured by a ball that was thrown or batted through the screen. In considering the case, the court, speaking by Mr. Justice Deemer, said:

"The action sounds in tort, and is manifestly for trespass, or perhaps trespass on the case. Defendants were, of course, agents of the society. They were not the society itself, but were acting purely in a representative character. If liable at all, it is because of what they did. If they were guilty of some misfeasance or trespass, as distinguished from mere nonfeasance, then they were and are liable, and they cannot shield themselves by saying that they were acting as agents for the society. And in this connection it is entirely immaterial whether their acts were *ultra vires* or within the scope of their authority. No one is permitted to say, in an action against him for trespass or for misfeasance, that he was acting as an agent, in doing the matters complained of, and is, therefore, not liable. Nor is his liability to be measured by the extent of the authority conferred upon him. On the other hand, no agent is liable to a stranger simply for nonfeasance: that is to say, for failure to do some act which his principal commits to his care. He may be liable for breach of contract to his principal, but not to a stranger for a tort. These views are stated with great force and perspicuity in *Murray v. Usher*, 117 N. Y. 542 (23 N. E. 564), and *Cincinnati R. Co. v. Robertson*, 115 Ky. 858 (74 S. W. 161). That the same rule applies to officers and directors of corporations, see 3 Thompson on Corporations, Sections 4090, 4091, 4096, *et seq.*; *Bruff v. Mali*, 36 N. Y. 200; *Salmon v. Richardson*, 30 Conn. 360 (79 Am. Dec. 255). Nonfeasance is the nonperformance of some act which ought to be performed, and misfeasance is the performance of an act in an improper manner, whereby someone receives an injury. *Illinois Cent. R. Co. v. Foulks*, 191 Ill. 57 (60 N. E. 890). So that, as defendants may only be held liable for misfeasance, and can only be held liable for the negligent performance of some act which they undertook to perform, it must be shown, before they can be held liable, that such ones as are sought to be charged did something in a negligent or improper manner."

In the instant case, there is no question of nonfeasance before us, because it is conceded on all hands that appellee under-

took the performance of its contract with the refrigerator company.

Is *Williams v. Dean* correct in principle, or should it be overruled? Can appellant be held liable to the appellee for misfeasance in performing its contract with its principal?

In *Murray v. Usher*, 117 N. Y. 542 (23 N. E. 564), cited by us in *Williams v. Dean*, it is said:

"* * * But the agent or servant is himself liable, as well as the master, where the act producing the injury, although committed in the master's business, is a direct trespass by the servant upon the person or property of another, or where he directs a tortious act. In such cases, the fact that he is acting for another does not shield him from responsibility. The distinction is between misfeasance and nonfeasance. For the former, the servant is, in general, liable; for the latter, not. The servant, as between himself and his master, is bound to serve him with fidelity, and to perform the duties committed to him. An omission to perform them may subject third persons to harm, and the master to damages. But the breach of the contract of service is a matter between the master and servant alone, and the nonfeasance of the servant causing injury to third persons is not, in general at least, a ground for a civil action against the servant in their favor."

In *Baird v. Shipman*, 132 Ill. 16, it is said:

"It is not his contract with the principal which exposes him to or protects him from liability to third persons, but his common-law obligation to so use that which he controls as not to injure another. That obligation is neither increased nor diminished by his entry upon the duties of agency, nor can its breach be excused by the plea that his principal is chargeable."

In this case, the agent of the owner had control and management of the premises, and was held liable for failure to make repairs, which failure resulted in injury to the third party.

In *Campbell v. Portland Sugar Co.*, 62 Me. 552, the plaintiff was a driver of a wagon, and his duties took him to a certain wharf. He stepped into a hole, and was injured. The sugar company owned the wharf, and the other defendants were its general agents, and had the management of its business and charge of the wharf. The court said:

"The other defendants, who were the general agents of the corporation, and had the care of this wharf, and who, through their senior partner, had agreed with the lessees to make all needful repairs, are certainly in no better position than their principal. It is the actual personal negligence of the agents which constitutes the constructive negligence of the corporation. The corporation acts through and by them, and they act for the corporation; and when their acts or neglects result in injury to third parties, they are equally responsible with their principals."

In *Horner v. Lawrence*, 37 N. J. Law 46, an agent or employee hauling wood for his employer failed to close a certain fence, in consequence of which hogs escaped from a pasture to a railroad, and were killed. It was held that the servant was liable to the owner of the hogs. The court said:

"It was his own misfeasance, for which, as servant, he cannot, in any respect, claim exemption against the party injured."

In *Lottman v. Barnett*, 62 Mo. 159, the architect of a building, who superintended its construction, failed to place sufficient girders or columns in the building, and injury resulted to a third person. The court said:

"For negligence, he is responsible, not merely to his employer, but to persons injured by reason of his acts."

In *Bickford v. Richards*, 154 Mass. 163, the parties negligently injured buildings in removing them, and were held liable, the court saying:

"Whether servants or contractors, they are liable for the damage caused to the plaintiff's property by their tortious acts or misfeasance."

In *Harriman v. Stowe*, 57 Mo. 93, the defendant, as agent for his wife, made a trapdoor on her premises. A third party was injured. The court said:

"The present case seems to be one, not of mere nonfeasance or omission, but of strict negligence or wrong."

*Lough v. Davis & Co.*, 30 Wash. 204 (70 Pac. 491), was an action against an agent who was authorized to rent and repair a tenement house. The claim was made that the agent permitted the house to become unsafe for want of repairs, which

caused the injury complained of. There is a very full discussion and review of the authorities. The court said:

"There can be no distinction in principle between the acts of a servant who puts in motion an agency which, in its wrongful operation, injures his neighbor, and the acts of a servant who, when he sees such agency in motion, and when it is his duty to control it, negligently refuses to do his duty, and suffers it to operate to the damage of another. There is certainly no difference in moral responsibility; there should be none in legal responsibility. Of course, if the omission of the act or the nonfeasance does not involve a nonperformance of duty, then the responsibility would not attach. If it does involve a nonperformance of duty to such an extent that the agent is liable to the principal for the damages ensuing from his neglect, there is no hardship in compelling him to respond directly to the injured party. Such practice is less circuitous than that which necessitates first the suing of the master by the party injured, and then a suit by the master against the servant to recoup the damages."

It was held that a cause of action was properly pleaded.

In *Ellis v. McNaughton*, 76 Mich. 237 (42 N. W. 1113), plaintiff was injured on a defective sidewalk. The question in the case was whether the defendant, as agent of the owner of the premises, could be held liable. The court said:

"Irrespective of his relation to his principal, he was bound, while doing the work, to so use the premises, including this sidewalk, as not to injure others. Misfeasance may involve to some extent the idea of not doing; as where an agent, while engaged in the performance of his undertaking, does not do something which it was his duty to do under the circumstances; as, for instance, when he does not exercise that care which a due regard for the rights of others would require."

In *Stiewel v. Borman*, 63 Ark. 30, at 39 (37 S. W. 404), plaintiff sued for injuries in a coal mine by reason of negligence of an agent in allowing gas to accumulate. It was held that the agent was liable. The court said:

"The liability of the agent rests upon his failure to discharge a duty, as in misfeasance. Having complete control and management of the business, with the power and authority to

do what is reasonably necessary to protect third persons against injuries resulting from omissions or commissions in the conduct of the same, he stands in the relation to others which his principal occupies. He is under obligation to so use that which he controls as not to injure another. For a failure to discharge this duty, he is liable in damages to the party injured. This is a reasonable rule.''

To like effect are *Osborne v. Morgan,* 130 Mass. 102; *Ward v. Pullman Car Corpn.,* 131 Ky. 142; and *Tippecanoe L. & T. Co. v. Jester,* 180 Ind. 357 (101 N. E. 915).

Some of the cases go further, and indicate that the agent is liable for nonfeasance, as well as misfeasance.

In *Ellis v. Southern R. Co.,* 72 S. C. 465 (52 S. E. 228), the court reviewed the authorities somewhat, and held:

''The true rule deducible from the authorities is that the servant is personally liable to third persons when his wrongful act is the direct and proximate cause of the injury, whether such wrongful act be one of nonfeasance or misfeasance.''

There is another line of cases a little nearer to the exact proposition involved in this case, and this is the class of cases where an agent or servant undertakes to perform a particular work for the principal or master, and has full charge and control thereof. These cases hold that the agent is liable for an act of negligence in said work resulting in injury to a third person, whether it be an act of omission or commission. In such cases, an omission of duty imposed upon him is deemed to be a misfeasance.

In *Orcutt v. Century Bldg. Co.,* 201 Mo. 424 (99 S. W. 1062), the agent undertook the management of a building for his principal, and entered into the performance of the work. It was held that he was liable for injuries to a third party, caused by his misfeasance.

In *Carson v. Quinn,* 127 Mo. App. 525 (105 S. W. 1088), an agent who had the exclusive control and supervision of premises used for tenement purposes was held personally liable for injury received by a tenant who fell into a hole in the passageway.

Likewise, in *Bannigan v. Woodbury,* 158 Mich. 206 (122 N. W. 531), an agent in full charge and control of a building was

held liable for injuries caused by the fall of a pane of glass, which was negligently allowed to remain in an unsafe condition.

In *Atkins v. Field,* 89 Me. 281 (36 Atl. 375), the court said:

"If the defendant had not undertaken to rig and set up the derrick, or in so doing had simply executed the will of a lawful superior as to details of mode and material, there might be said to be mere nonfeasance on his part. But he did undertake the work, and practically exercised his own discretion as to mode and material. He was then bound to act carefully in every respect, and his carelessness in any respect was a misfeasance."

A leading case announcing the contrary rule is *Delaney v. Rochereau & Co.,* 34 La. 1123. In this action, a child was injured by the falling of a gallery of a house. The agents of the owner, who were bound to keep the building in good order, were sued for the injury. The court said:

"Everyone, whether he is principal or agent, is responsible directly to persons injured by his own neglect, in fulfilling obligations resting upon him in his individual character and which the law imposes upon him, independent of contract. No man increases or diminishes his obligations to strangers by becoming an agent. If, in the course of his agency, he comes in contact with the person or property of a stranger, he is liable for any injury he may do to either, by his negligence, in respect to duties imposed by law upon him in common with all other men. An agent is not responsible to third persons for any negligence in the performance of duties devolving upon him purely from his agency, since he cannot, *as agent,* be subject to any obligations towards third persons other than those of his principal. Those duties are not imposed upon him by law. He has agreed with no one, except his principal, to perform them. In failing to do so, he wrongs no one but his principal, who alone can hold him responsible."

In *Feltus v. Swan,* 62 Miss. 415, an agent was sued for negligence in failing to open a drain, because of which failure lands adjacent to the plantation of which he had charge were injured. It was held that there was no liability, although it was charged that the act was malicious.

See, also, *Galbraith v. Illinois Steel Co.*, 133 Fed. 485; *Dean v. Brock*, 11 Ind. App. 507 (38 N. E. 829).

We are confident that the rule announced by us in *Williams v. Dean* is sustained by the great weight of authority, and is sound in principle. We therefore hold that for misfeasance in the performance of its contract with its principal, which misfeasance caused injury to appellee's property, the latter had a right of action in tort against appellant. *Boston Ins. Co. v. Chicago, R. I. & P. R. Co.*, 118 Iowa 423, *Dillon v. Iowa Cent. R. Co.*, 118 Iowa 645, and *Cramblitt v. Percival-Porter Co.*, 176 Iowa 733, cited by appellant, are not inconsistent with this holding.

II. Appellant contends that the rule which exonerates an intermediate servant, where an injury has been committed by a subordinate one, under circumstances which make the immediate actor and the ultimate principal liable, should be applied. See *Williams v. Dean*, supra. We fail to see how the rule contended for has any application to the facts of the instant case. Appellant, under its contract, undertook the work of loading and icing the car, and had full control as to how the work should be done.

III. It is contended that the railway company accepted the work of loading and icing, and that this absolves the appellant from liability. There is no evidence from which the jury could have found that the railway company knowingly accepted and approved the work of the appellant in loading and icing the cars, even if the rule contended for should be approved.

IV. It is contended by appellant that the evidence does not disclose that the alleged acts of negligence of appellant caused the damages complained of. It is unnecessary to review the evidence on this question. It was fairly before the jury, and properly submitted to it. There was sufficient evidence to go to the jury to support the claim of improper loading and icing, and that the same resulted in damages to appellee. It was essentially a jury question; and, finding sufficient evidence in the record to sustain the verdict, we cannot interfere.

V. It is contended that the appellee was guilty of contributory negligence, and for that reason cannot recover. This

was a question for the determination of the jury, and was properly submitted by the court.

VI. Errors are urged in the admission of evidence. The first error urged on this ground that demands our attention is with respect to a transcript of testimony, which was admitted under Section 245-a of the Supplement of 1913. From the record, it appears that the appellee, herein originally instituted suit in Wapello County against the appellant and the Chicago, Milwaukee & St. Paul Railway Company, on February 13, 1914. Said action involved the identical shipment and cars under consideration in this action. The cause was submitted to the district court of Wapello County and tried without the intervention of a jury in October, 1915. Subsequently, the court entered a finding that the railway company could not be held liable, because of failure on the part of the appellee to comply with the requirements of the bill of lading in respect to the giving of notices; but that the refrigerator company was liable. Upon the motion of the appellant herein, under Section 3502 of the Code, the action was dismissed, the order reciting:

"Such dismissal is without prejudice to the merits of the action as between plaintiff and said defendant."

Immediately thereafter, the present suit was instituted, embracing the identical matters included in the previous suit. This action was aided by attachment. Upon the trial of this cause, the appellee read in evidence from the transcript the testimony of certain witnesses given upon the former trial before the district court. Was this evidence properly admissible, under the provisions of Section 245-a of the Supplement to the Code, 1913? This section of the statute provides that any transcript of an official court reporter, "when material and competent, shall be admissible in evidence on any retrial of the case or proceeding in which the same were taken."

We do not think that the legislature intended to use the word "case" in the statute in a narrow and strictly legal and technical sense. The evident purpose was to obviate the necessity of producing witnesses who had once been before the court and had testified respecting the matter in controversy between the parties. Under the provisions of the statute itself, if we

2. EVIDENCE: reporter's transcript: different suits involving same parties and issues.

should now reverse the case and send it back for a new trial, the transcript of the evidence on the last trial, which would include the transcript of the evidence of the first trial, would be admissible. Such an incongruous condition was never contemplated by the legislature. The proper course to have pursued would have been to serve notice of intention to use the transcript, or obtain an order of court so to do, or secure a stipulation providing for its use. The situation here presented can and should be easily obviated.

In *In re Will of Wiltsey*, 135 Iowa 430, we held, under a somewhat similar situation, that, where no new issues were involved and the evidence taken on the former trial was in respect to the very matters determined in the subsequent trial, the transcript was properly admitted in evidence.

Nothing in *Spiers v. Hendershott*, 142 Iowa 446, is inconsistent with this holding. In that case, it affirmatively appeared that the transcript was offered in a case which was not a retrial of a former case, but that the actions were entirely distinct, and involved two separate and distinct wills, and that the action in which the evidence contained in the transcript was received had gone to final judgment. It is to be observed that the original case herein did not go to final judgment. It was dismissed as to the appellant, under the provisions of Section 3502 of the Code. The order of court recited:

"Such dismissal is without prejudice to the merits of the action as between plaintiff and said defendant. The court finds and adjudges that the failure of plaintiff to prevail herein as against the said defendant is not because of any negligence in its prosecution."

Under the record, we think that this transcript was admissible, under this section of the statute. The parties were the same; the issues were the same; it was, to all intents and purposes, a retrial of the identical "case" in which the evidence in the transcript had been taken.

In this connection, error is also predicated upon the action of the lower court in permitting the appellee to offer in evidence the deposition of a witness which was taken at the former trial above referred to. No question is raised that the depo-

3. DEPOSITIONS: admissibility in subsequent and different action.

sition was not properly taken and filed upon the previous trial. It also appears that the deposition was taken upon notice, and that the appellant herein appeared, and cross-examined the witness. It is urged, however, that the deposition was not duly filed in the instant case, nor was leave obtained to use it before the trial was begun.

We are cited to *Searle v. Richardson*, 67 Iowa 170. Therein we said:

"But we are very clear that, under our practice, a party should not be permitted to use depositions on the trial of one cause which have been taken in another, without having filed them in the cause in which he proposes to use them, or obtaining leave before the commencement of the trial to so use them."

The rule so declared is undoubtedly correct, and a party should not be allowed to transport depositions from one cause to another without duly filing the same in the cause in which he proposes to use them, or obtaining leave of court to so use them, before the commencement of the trial. The reason for this rule is obvious. The evidence of a witness taken in one cause may be, in a large measure, material in some other cause between the same parties, but a portion of the evidence may be material in one case and wholly inadmissible in the other. But the rule can have no application where the deposition is used in a retrial of the same identical case, with the same parties and the same issues.

Furthermore, it appears that the deposition now in question was offered in evidence in the former trial of the case, and the shorthand notes of the official court reporter so show. Certainly, no prejudice could result to the appellant by the reading of the original deposition, rather than by having the shorthand reporter read the same to the jury, from his shorthand notes.

We think the court did not err, upon this record, in admitting the deposition in evidence.

VII. Error is predicated upon the giving of certain instructions to the jury, and the refusal to give instructions that were requested. The matters complained of largely include the same subject-matter heretofore discussed in this opinion, and it is unnecessary to discuss the matter further. We find no error in the instructions that were given, or in the refusal

to give the instructions that were requested by the appellant. The case seems to have been fairly submitted to the jury, and the judgment appealed from must be affirmed.

In view of this conclusion, no further consideration need be given to the appellee's cross-appeal.—*Affirmed.*

EVANS, C. J., WEAVER, STEVENS, and ARTHUR, JJ., concur.